TRAUT & HINE MANUF'G CO. et al. v. WATERBURY BUCKLE CO.

(Circuit Court, D. Connecticut. November 16, 1894.)

No. 820.

1. PATENT—INFRINGEMENT—PRELIMINARY INJUNCTION.

Defendant's device showed all the elements of the broadest claim of the patent to George E. Adams (No. 487,689), for a "cast-off" device for connecting and disconnecting the web and the front end of a pair of suspenders, but defendant's arrangement of parts was not wholly that of the patent, but the practical equivalent, the patentee's arrangement not being essential to the operation of his device. *Held*, that a preliminary injunction should be granted, and its operation suspended until the case be heard and disposed of by the circuit court of appeals.

2. SAME—ANTICIPATION.

An affidavit that certain exhibits, claimed to anticipate or limit the scope of the patent in suit, were conceived prior to the application, and manufactured prior to the issue of the patent, and that the exhibits were suggested to take the place of a certain imported device alleged to have been in use in this country prior to the date of the patent, is too indefinite to constitute a defense.

This was a bill in equity by the Traut & Hine Manufacturing Company and George E. Adams against the Waterbury Buckle Company for infringement of a patent. Heard on motion for preliminary injunction.

Mitchell, Hungerford & Bartlett, for complainants.

Terry & Bronson, for respondent.

TOWNSEND, District Judge. Motion for a preliminary injunction. The patent in suit, No. 487,689, is for an improvement in garment supporters, and was applied for by the complainant George E. Adams, August 9, 1892, and granted December 6, 1892. The complainant corporation is the exclusive licensee under said patent. The complainant and defendant corporations are each large manufacturers of suspender fittings. The invention claimed covers a novel construction of the device known as a "cast-off," whereby the web and the front ends of a pair of suspenders are readily and rapidly con-

nected and disconnected. The objects of the invention are stated to be "to produce a cast-off device, through which a portion of the attaching loop may readily slide with the constant changes in position of the wearer," and "to provide an ornamental form of cast-off device which will be durable in construction and simple and convenient in operation." The combination claimed comprises oppositely pivoted back and front plates, the lower portions of each being concave,—the back member or guard tongue in order to receive and support the suspender cord, the front member in order to fit snugly over said guard tongue,—and a catch, and lip to engage said catch. The catch is described in the specification and shown in the drawings as located "at the point of junction between the concavity and the lip," which is at the center of the concavity formed by the two opposing sides when in attachment.

The claims of said patent are as follows:

"(1) In a cast-off for garment supporters, in combination, two oppositely pivoted members, having oppositely arranged concavities to receive a cord or its equivalent, and a latch for positively locking the members together, as described. (2) In a cast-off for garment supporters, the combination, with a depending plate having a downwardly curved transverse concavity and a guard tongue curving upward from the edge thereof, of an oppositely curved locking member, adapted to fit over the guard tongue, as described. (3) The combination, with the plate, 9, having the concavity, 10, the guard tongue, 11, and a catch, 12, and pivoted to the link, 5, by the ears, 8, 8, of the locking member, 14, also pivoted to said link, and having a lower concavity, adapted to cover said guard tongue, a lip, 15, for engaging the catch, 12, and a thumb piece, 16, as and for the purpose described."

Title in complainants is proved. There has been no adjudication establishing the validity of the patent, but acquiescence is claimed, and is supported by affidavits from which the following facts appear: The first cast-offs manufactured in accordance with the claims of said patent were furnished in September, 1892, to Fisk, Clark & Flagg, suspender makers in New York City, who had obtained the exclusive control of the patented article. It was not furnished to the general trade until February or March, 1894. During the whole period since the fall of 1892, covering, it is claimed, two seasons in each year, the public have acquiesced in the validity of said patent. Notwithstanding the fact that the trade in general have expressed a desire to obtain such cast-offs, and were unable to do so until recently on account of the Fisk, Clark & Flagg contract, the affidavits of several of the largest manufacturers and dealers in various states show that they recognized the novelty and great utility of the device, and refrained from the infringement of the patent. The sales have been constantly increasing, and already amount to upwards of a million cast-offs. So far as appeared on the hearing, this cast-off was a meritorious article, and a decided improvement upon those shown by the prior art. The affidavits of the witnesses for defendant do not seriously question the validity of the patent. These facts support the presumption of validity raised by the grant of the patent sufficiently to warrant a temporary injunction.

The defendant denies infringement. It appears that the style of cast-off furnished to the trade in February or March, 1894, differs

from that manufactured for Fisk, Clark & Flagg, and from the device illustrated in the drawings of the patent. The cast-off manufactured by defendant is almost identical with this later model. The claim of defendant is that neither of these cast-offs is covered by the patent. Complainants' exhibit, "Waterbury Cast-Off," shows the device manufactured by the defendant. The lower portion of the back plate is curved in the shape of a letter J, the upper or front part forming a lip. The front plate is not concave. It is slightly curved, but such curve is not absolutely essential to the practical operation of the device. It has a lip to engage the catch in the back plate, but this lip and catch, when in engagement, are not located at the center of the concavity, but at the upper end of the front part of the back plate. It therefore has neither the specific oppositely arranged concavities, nor the catch at the point of junction between the concavity and the lip, of the first and third claims.

It is strenuously urged by counsel for complainants that defendant's cast-off contains the elements of complainants' invention in the combination claimed by the patentee, provided the patent is properly and fairly construed. Whether this contention is correct depends upon the construction of the second claim, which appears to be the broadest of the three claims. All of the elements of the patented device are found in defendant's cast-off. The question is whether they are constructed and combined as described in said patent. The lower end of the front plate is adapted to be used as a thumb piece. I think the curve at the lower part of defendant's back plate may fairly be considered as the practical equivalent of the concavity in the back plate of complainants' patent. Each is so constructed and arranged as to receive and hold the button-hole loop, and allow it to readily slide with the constant changes in position of the wearer. The front plate, although not concaved or snugly fitting, yet is "adapted to fit over the guard tongue." The phrase "as described" does not necessarily confine the patentee to every detail of construction stated in the specification. It must be interpreted in the light of the substance and substantial purpose of the invention. The location of the catch is not, and is not stated to be, a special feature of complainants' invention. It relates merely to the form of the device. The object was to so arrange it that it might be readily engaged and disengaged. The downward pull being entirely on the back plate, it is not essential to the practical operation of the device that said catch be located at the center of the concavity. Lake Shore & M. S. Ry. Co. v. National Car-Brake Shoe Co., 110 U. S. 235, 4 Sup. Ct. 33; Snow v. Railway Co., 121 U. S. 617, 7 Sup. Ct. 1343.

The affidavit of Dwight S. Smith, the general superintendent of the defendant corporation, as to certain exhibits claimed to anticipate or limit the scope of the patent in suit, is not sufficiently definite to constitute a defense. He merely states that they were conceived by him prior to the date of the application for the patent in suit, and were manufactured by the defendant corporation prior to the date of the issuing of said letters patent. There is no evidence to show the character of the conception, or whether or not it was reduced to practice. The same criticism applies to the statement in

his affidavit that these exhibits were suggested to take the place of some imported device alleged to have been in use in this country prior to the date of the patent.

I am inclined to think, though with some hesitation, that the limitations contended for by defendant should not be applied. In the recent case of Consolidated Bunging Apparatus Co. v. Metropolitan Brewing Co., 8 C. C. A. 485, 60 Fed. 93, Judge Lacombe, delivering the opinion of the court of appeals refusing to confine the claim to a certain form illustrated and described in the patent, says:

"Except for the italicized phrase quoted in the first of these descriptions, there is no reference whatever in the specification to a knife-edge bearing valve. Nowhere is there pointed out any advantage arising from the use of that particular form of mechanical fit valve. There is no suggestion that anything depends upon the bearing being of this shape; nothing to show that such a construction was regarded by the patentee as an improvement, to be covered by his patent; and the claim is not for a combination with a knife-edge bearing valve, but for one with a mechanical fit valve, which term, as has been shown, covers many other bearings besides the knife-edge; and a construction of the first claim which will confine it to knife-edge bearing valves cannot be sustained." Delemater v. Heath, 7 C. C. A. 279, 58 Fed. 414.

See, also, Woodward v. Machine Co., 8 C. C. A. 622, 60 Fed. 283.

Under all the circumstances, I think the ends of justice will best be promoted by granting the injunction asked for, but suspending its operation until the case can be heard and disposed of by the circuit court of appeals. Let a decree be entered for a preliminary injunction, and also an order suspending its operation in accordance with this opinion.