## WILLETT v. FISTER.

The testimony of a wife and daughter, undertaking to swear from mere memory after a lapse of several years, as to the exact year (as *ex. gr.*, whether 1865 or 1866) when they saw a particular paper, discredited; there being circumstances leading to the inference that they were mistaken as to the year; and the purpose of the suit which their testimony was brought to sustain being to disturb, in favor of the husband and father, after a lapse of nearly five years, and after the death of one of the opposite parties to it, a settlement apparently fair.

APPEAL from the Supreme Court of the District of Columbia; the case being thus:

John Fister, a butcher, had a stall in market where he sold pork. He bought his hogs of V. Willett and W. E. Clark, trading as V. Willett & Co., and there was a pass-book held by Fister in which the debits and credits were entered of the transactions between the parties; the *original entries* being made on the commercial books of Willett & Co. On Fister's pass-book, under date of 21st November, 1865, was the following entry:

"By cash, on 30th of October, $1500."

And on Willett & Co.'s books:

"1865, October 30th, by cash, for proceeds of stall, $1500."

The account on the pass-book, as well as the account on Willett & Co.'s books, were all closed on December 14th, 1865, by "a note, at four months from this date, for $1726.69."

The pass-book and the defendant's commercial books were all in the handwriting of Willett, who died in 1869.

On the 15th of June, 1866, Fister confessed to V. Willett & Co. a judgment for $6226, the amount of several notes

which he had given for balances due from him in running account; and subsequently conveyed several lots of ground, the proceeds of which on sale of them were to be applied towards payment of the judgment.

In this state of things, on the 15th of December, 1870, Willett being now dead, Fister filed a bill in the court below against his executors and Clark, praying that the judgment which he had confessed might be set aside; the ground of the bill being, as was alleged, that he, Fister, was an ignorant man, scarcely able to write his name, and had been induced to give the judgment for $6226, not observing that Willett & Co. had not credited him with a payment of $1500 made some months before the confession of it, for which payment he, Fister, had then and still had a receipt. The receipt was without date, and in these words:

"Received of John Fister, fifteen hundred dollars on account, which is not on his book, owing to his not having it along to-day.
                                                              "V. WILLETT & Co."

It did not appear that any other receipt than this, excepting one for $800, signed by Clark, and dated October 20th, 1863, had ever passed between the parties. The pass-book and Willett & Co.'s books were apparently the only records.

The answer, both by the defendant Clark and the executors of Willett, gave full details of the transactions between Fister and V. Willett & Co.; averred that Fister made but one payment to them of $1500; denied that he had a receipt for $1500 for which he had not already received credit; averred that the judgment was properly entered for the amount due and no more, " and that all the credits to which the plaintiff was entitled were allowed him; and that he at that time well understood the same, and was perfectly satisfied with the said settlement."

The only question in the case was one of fact: Did the receipt *without date* refer to the transaction of 30th October, 1865, or to another amount of $1500 which Fister alleged had been paid in April, 1865?

The case being at issue, Adeline Fister, wife of the com-

plainant, was examined; this examination being on the 5th of February, 1871; and the defendants objecting to her testimony as not competent under the acts of Congress, in virtue of which it was offered.*    Mrs. Fister said:

" I attended to the principal part of my husband's business in market; received and paid out the money for him; I was in fact the banker of my husband.  I got the receipt in April, 1865; I know it was then, because I was cleaning some shad and wanted some change, and I went up to where my husband's jacket was hanging on the sideboard, and run one of my hands down one of his pockets to see if there was any money in it; I pulled out this paper; I then called in my daughter, Maria, and she read it. . . . After she read it, I carelessly threw it in the drawer and didn't think anything more about it for some time; I looked at it again afterwards, and put it in an old book which Mr. Willett had laid aside, and did not take it out again until a year subsequent; I never showed the receipt to my husband; he never saw it; 1 did not think it was anything of any account; I merely laid it aside; I did not know exactly what it was for; I did not call my husband's attention to it when he went to make the settlement with Willett, for I did not know of a settlement till he came back; I did not call his attention to it when he came back; I found it in 1865; Mr. Willett died in 1869; I cannot say for what that receipt was given; it might have been given for the $1500, or it might not, that I sent my husband with; I can only swear as to the time I got the receipt."  " I had often sent Mr. Willett a roll of money of $1500 or $2000 at a time; the way he did not have it on the books is this: this $1500 or $2000 was in payment, perhaps, of two or three lots of hogs, and I got credit on the books for each lot of hogs separately."

" *Question.* Did you ever pay him as much as $2000 in one day ?"

" *Answer.* I don't know as I paid him $2000, but I know I paid him $1700 in one day, and I paid large amounts at other times; I remember that *in January or February*, 1865, *I sent him* $1500; my husband was going down, and having worried me a great deal about the book, not being able to find it, I said, ' I wish to

---

* Act of July 2d, 1864, and the amendment to it of March 3d, 1865 (13 Stat. at Large, 351, 533).

heaven you and Mr. Willett would settle your business together and not trouble me.' I wrapped up one roll of $600 with red string, and I took a piece of flannel and tied up another bundle of $900 with it; he put the $600 into his side-pocket and the other bundle of $900 into his pantaloons pocket."

Mrs. Maria Clements, daughter of the complainant, was also examined. She said:

"One day my mother called me to her and said she had a receipt there that she could not understand; it had Willett's name on it; I read it, she holding it; I told her it was a receipt for $1500, with no day and date; that was in the month of April, 1865; after I read it, I gave it back to her and told her to take care of it; I know it was in April, 1865, because she asked me to remember, and I did; I also mentioned the day, but I have now forgotten that."

"*Question.* What makes you recollect it was April, 1865?"

"*Answer.* When I said, 'There is no day and date,' she said, 'This is the way your father has been doing business; he takes a receipt without day or date; now we will remember this;' that is what makes me recollect it was in April, 1865—my telling her it was in April, 1865; that impressed it on my memory; it could not have been in 1866."

"*Question.* Have you had any conversation with her about it since April, 1865, until to-day?"

"*Answer.* We have often talked it over, but I could not state how often; I know nothing further touching the matter in controversy."

Fister's pass-book contained entries thus:

*John Fister in account with V. Willett & Co.*

1865.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| January 5. | By cash, $402.13; | 12, | cash, | $2*9.12, | . | . | $621 | 25 |
| 12. | " | 349.00; | 20, cash, | 371.51, | . | . | 720 | 51 |
| 20. | " | 403.50; | 29, do., | 249.85, | . | . | 653 | 35 |
| 29. | " | 525.15; | 7 February, do., | $90.22, | . | | 615 | 37 |
| February 7. | " | 809.78; | 14 " | do., 116, | . | | 925 | 78 |
| 14. | " | 519.10; | 21 " | do., 369.52, | . | . | 888 | 62 |
| 21. | " | 325.52; | 28 " | do., 516.09, | . | | 841 | 61 |
| 28. By *note at 6 months, for* | | . | . | . | . | . | 1000 | 00 |
| 28. By cash, $44, | | . | . | . | . | . | 44 | 00 |
| 28. By *note at 6 months, for* | | . | . | . | . | . | 1000 | 00 |
| 28. By *amount over*, . | | . | . | . | . | . | 120 | 19 |

The pass-book showed that, taking the various sums total of cash paid by Fister, from January to November, 1865, the addition of $1500 to the amount paid in any one month would make a much larger sum than was ever paid in any other month.   For example, the cash receipts were:

| | |
|---|---|
| January, 1865, . . . . . . . | $2610 48 |
| February, . . . . . . . . | 2655 91 |
| March, . . . . . . . . | 2771 12 |
| April, . . . . . . . . | 2327 00 |
| May, . . . . . . . . | 2501 00 |
| June, . . . . . . . . | 2520 00 |
| July, . . . . . . . . | 2183 00 |
| August, . . . . . . . . | 2408 00 |
| September, . . . . . . . | 1984 00 |
| October, . . . . . . . . | 2696 00 |
| November, . . . . . . . | 1989 30 |

Clark, one of the defendants, was also examined, and he testified that in his presence, in the autumn of 1865, Fister paid Willett $1500, saying that he had not his pass-book with him; that Willett gave him a receipt; that so far as the witness knew, Fister had never paid any other sum of $1500 afterwards; that Fister, in confessing the judgment to secure the notes which he had given, said " that he thought he had done right, as he owed the debt and could not pay the money and wanted to secure it," and that he had never made to the witness any complaint that the judgment had been confessed for too much.

The court below sustained the claim of the complainant to the *two* credits and the defendants appealed.

*Messrs. Reginald Fendall and T. J. Durant, for the plaintiff in error; Messrs. C. Ingle and B. H. Webb, contra.*

Mr. Justice STRONG delivered the opinion of the court.

We need not inquire whether the deposition of Adeline Fister, the wife of the complainant, was properly received, for, with her testimony, there is not sufficient evidence to support the decree of the court below.

The bill was not filed until December 15th, 1870, four

years and a half after the alleged mistake. During that long period the complainant made no pretence that he had not received all the credits to which he was entitled. Constantly assenting by his silence to the correctness of the settlement, and of the judgment he had confessed, he conveyed several lots of ground to the defendants and others, that the proceeds of the sales thereof might be applied in payment, and it was not until after the death of the person who received the money which he now claims was not credited that this suit was brought. Certainly after such delay, and after such long apparent acquiescence in the correctness of the settlement, the evidence ought to be very clear that a mistake was in fact made, in order to justify unravelling what was done.

The settlement included several notes which the complainant had given for balances due from him, according to a running account. This account had been kept in the books of Willett & Co., and also in a pass-book held by him. It is not contended that the judgment was not taken for the sums for which the notes had been given, or that the notes were for a larger aggregate than appeared to be due by the accounts kept, both in the complainant's pass-book and in the books of the defendants. The contention is that a payment was made by the complainant, which did not appear on any of the books, and which was not credited to him. The evidence of this is an undated receipt for $1500. But the books of the defendants show a credit given for that sum on the 30th of October, 1865, and in the pass-book there is an entry of credit for the same sum, under date of November 21st, 1865, as having been received October 30th. As the receipt itself is the only receipt which appears ever to have been given, except one for $800, dated October 20th, 1863, signed W. E. Clark, and as it states that the complainant had not his pass-book along when the payment was made, it would seem to be a reasonable presumption that it refers to the payment made on the 30th of October, and which was afterwards, on the 21st of November, credited in the pass-book. If so, there was plainly no mistake in the notes and

none in the judgment.   Then certainly the complainant received every credit which was his due.

But Mrs. Fister testifies that she saw the receipt in April, 1865, before the payment of October 30th was made.  If she is correct in that, then the payment made in October was a different payment from that acknowledged in the receipt. But we are satisfied that her memory in regard to the time when she first saw the paper is at fault.   There is nothing in regard to which a witness is more likely to be mistaken than in fixing the date at which a transaction long past took place.   She was examined as a witness in 1871, nearly six years after the time when she says she found the receipt in her husband's pocket.   When she found it, according to her own account, she did not think it of any importance.   She " carelessly threw it in a drawer, and did not think any more about it for some time."  Then she put it in an old book and laid it aside, and did not take it out for a year.   She did not call her husband's attention to it before he settled with the defendants.   She " was not aware she had it."   She " never showed it to her husband," though she knew when he went to make the settlement.   She did not think it was of any account, and there was no circumstance associated with her finding it that could have tended to impress the time upon her memory.   She says she knows it was in April, 1865, because she was cleaning shad and wanted change; but she may as well have been cleaning shad in 1866 as in 1865.   The same remarks are applicable to the testimony of Maria Clements, the daughter.   She says she remembers it was in April, 1865, because her mother told her to remember, saying, " This is the way your father has been doing business.   He takes a receipt without day or date.   Now, we will remember this."   Rather inconsistent this is with the testimony of the mother, who declares that she thought the paper of no importance.   It may be these witnesses have persuaded themselves they saw the receipt in April, 1865.   They have often talked the matter over with each other.  But there are many improbabilities in their statements.   Mrs. Fister says she was in fact her husband's

banker. She chiefly made the payments. She even goes so far as to say that she sent to the defendants, in January or February, 1865, $1500. Not, indeed, in one sum. Her language is: "I wrapped up one roll of $600 with red string, and I took a piece of flannel and tied up another bundle of $900 with it. He (her husband) put the $600 into his side pocket, and the other bundle of $900 into his pantaloons pocket." Such a minute recollection of a six-year-old transaction is almost too remarkable to be credited. But it is still more remarkable that neither the husband nor the wife discovered that they had no credit for so large a payment. The accounts show that on the 28th of February, 1865, on the transactions running through the months of January and February there was a balance of $2120.19, for $2000 of which he then gave his notes. If he had made the payment which he now asserts, the balance would have been only $620.19. It is incredible that he would have given notes for $2000 under such circumstances, for the payment must then have been fresh in his recollection. In addition to this we have the habit of business between the parties during the years 1864 and 1865, exhibited at large in the defendants' books and in the complainant's pass-book. If $1500 were paid in any month in addition to the sums credited, it would have been entirely outside of the usual course of business. It must have made an impression upon the complainant's memory when he gave the notes and confessed the judgment.

Looking, therefore, at the probabilities of the case as deduced from the evidence, at the long delay of the complainant to assert any claim, and at the fact that Mr. Willett had died before the bill was filed, we think there is no sufficient proof of a mistake to warrant a decree sustaining to any extent the complainant's bill.

Decree reversed, and the case remitted with instructions to

Dismiss the bill.