CAMPBELL PRINTING-PRESS & MANUF'G CO. v. MARDEN et al.

(Circuit Court, D. Massachusetts. December 11, 1894.)

No. 285.

1. PATENTS—ANTICIPATION—DIFFERENT OPERATION OF SIMILAR DEVICES.
   Where a change in the essential operation of a prior machine is necessary to produce the function of a later machine, the latter is not anticipated, though all of its devices, in substance, are used in the earlier machine.

2. SAME—EVIDENCE.
   Anticipation will not be found, except in very extreme cases, on evidence of the inventor of the alleged infringing machine, and the model recently made by him.

3. SAME—CLAIM—MECHANICAL EQUIVALENTS.
   Where a claim is not limited by the prior state of the art, it will not be limited by the fact of references by letters or figures to the specific mechanism shown in the patent.

4. SAME—"SUBSTANTIALLY AS AND FOR THE PURPOSE SET FORTH."
   The words "substantially as and for the purpose set forth" are to be construed as efficacious to import a limitation ascertainable from the specification, and necessary to make the claim coterminous with the invention, but are not to be used to import a limitation not inherent in the invention.

5. SAME—PRINTING MACHINE—ANTICIPATION.
   The substance of the Kidder invention of a web-printing machine (patent No. 291,521), and the improvement of Stonemetz (patent No. 376,-053), held to be the production of a device which shall print a web of paper stationary at the two ends thereof, by means of an impression cylinder moving in a moving fold of that web, and not to have been anticipated by any prior structure.

6. SAME—INFRINGEMENT.
   The Kidder patent, No. 291,521, for a web-printing machine, held to be infringed as to claims 1, 2, and 7, by the machine constructed under the Cox patents, Nos. 441,646, 451,459, and 478,503.

**7. SAME.**
    The Stonemetz patent, No. 376,053, for a web-printing machine, *held* to be void for want of novelty as to claim 8, and to have been infringed as to claim 12, but not as to claims 5, 7, 10, and 17, by the machine built under the Cox patents, Nos. 441,646, 451,459, and 478,503.

This was a suit in equity by the Campbell Printing-Press & Manufacturing Company against George A. Marden and others for infringement of certain patents for web-printing machines.

Louis W. Southgate, for complainant.

Frederic H. Betts, Samuel R. Betts, and T. H. Alexander, for defendants.

CARPENTER, District Judge.    This is a bill in equity to restrain an alleged infringement of letters patent No. 291,521, issued January 8, 1884, to Wellington P. Kidder, for printing machine, and No. 376,053, issued January 3, 1888, to John H. Stonemetz, for web-printing machine. The claims of the Kidder patent which are alleged to be infringed are as follows:

(1) In combination with a stationary bed and an impression cylinder traveling over it, guides for the web, one at each side of the impression cylinder, and a feeding device which feeds the proper length of web while the impression is thrown off, all substantially as described.

(2) In combination, two stationary beds, two traveling impression cylinders, and a feeding mechanism, substantially as described, combined together and with suitable guides, substantially as described, and operating to print both sides of a web, as set forth.

(7) The web-perfecting press above described, consisting of the two stationary beds, the two traversing impression cylinders, the two sets of inking apparatus, the web-guiding mechanism, substantially as described, and the intermittently operating web-feeding mechanism, substantially as described, all operating together substantially as described.

The claims of the Stonemetz patent which are alleged to be infringed are as follows:

(5) In a printing machine, the combination of two stationary type beds located on the same horizontal plane, and a traveling carriage carrying an impression cylinder and inking rollers for each of said beds, operating on said beds in their forward and backward movements, with means, substantially as described, for moving said carriage back and forth over said beds, and rollers adapted to convey a web of paper through said machine, whereby one side of the web may be printed on forms placed on one of said beds and the other side of the web on forms placed on the other of said beds, substantially as and for the purpose set forth.

(7) The combination, in a printing machine, of stationary type beds secured to the frame of the machine, and a traveling carriage carrying impression cylinders and inking rollers and web carrying rollers thereon, a vertically moving roller for taking up the slack of the web as it is unwound from the web roll, and a vertically moving roller for drawing the web forward, substantially as and for the purpose set forth.

(8) The combination, in a printing machine, of stationary type beds, and a traveling carriage conveying impression cylinders and inking rollers back and forth over said beds, with web-carrying rollers on said traveling carriage, stationary and adjustable web-carrying rollers on the frame work of the machine, and means, substantially as described, for intermittently drawing the web forward, substantially as and for the purpose set forth.

(10) In a printing machine, the combination, with stationary type beds located on substantially the same horizontal plane on the frame of the machine, and traveling impression cylinders and inking rollers adapted to

travel back and forth over said type beds, and take impressions both ways, of web-carrying rollers on the frame of the machine, web-carrying rollers connected with the traveling impression cylinder carriage, and means, substantially as shown and described, for taking up the slack of the web as it runs off of the web roll while the impression cylinders are passing over the type beds, and means, substantially as shown and described, for drawing the web forward when the impression cylinders are off of the type forms, substantially as and for the purpose set forth.

(12) The combination, in a printing machine, of the side frames A, A' the stationary type beds, B, B', with the traveling cylinder carriage, I, carrying the impression cylinders, E, E, which operate both forward and backward on said type beds, substantially as and for the purpose set forth.

(17) The combination, in a printing machine, of the web supporting rollers, M, M', and the vertically moving roller, W3, supported upon the arm, W', W2, with the cutting cylinders, S, S', substantially as and for the purpose set forth.

The machine used by the respondents is built under and in accordance with the description and drawings of three letters patent to Joseph L. Cox,—No. 441,646, issued December 2, 1890; No. 451,459, issued May 5, 1891; and No. 478,503, issued July 5, 1892. All the elements of the combinations set out and claimed in the patents in suit are to be found in printing machines older than these, and so also are a number of equivalents for these elements. I shall not undertake to specify these elements or recount the devices in which they appear. The substance of the Kidder invention, in the original patent and in the improvement of Stonemetz, seems to me to be the production of a device which shall print a web of paper, stationary at the two ends thereof, by means of an impression cylinder moving in a moving fold of that web. Such a device I do not find in any prior structure. The patent to R. Cummings, No. 83,471, issued October 27, 1868, shows a web of paper, and a fold, and an impression cylinder. If this mechanism were reversed in action, and the necessary resultant change made in the mode of operation so that the web of paper should be held stationary during the operation of printing, then, indeed, the function of the Kidder invention would appear. But this cannot be done without a change in the essential operation of that press. The devices, in substance, of the Kidder invention, are there; but the mode of operation is not there. On the other hand, the function of the invention appears on the press used by the respondents. It is claimed that the Kidder patent should be limited to a device containing vertical type beds. But there is nothing in the prior state of the art on which to found such a limitation, and the language of the patent does not suggest it. The form shown in the drawings contains vertical type beds, but the claims here alleged to be infringed do not imply vertical beds. Even if the words "substantially as described" should be held to import this form if the claims stood alone,—a position which, in the absence of any limitation in the prior art, I am not prepared to say is sound,— even then such a limitation cannot be read into these claims in view of the fact that the vertical form is claimed specifically in another part of the patent. The device of the respondents, therefore, infringes the above-recited claims of the Kidder patent. There is evidence in the case of a press made and used by Mr. Cox in 1878, which contains the devices of the Kidder patent. But the machine

is not shown to me. I have the evidence of Mr. Cox, and a model which he has since made, and which he testifies is a correct representation of the essential construction of that press. I cannot find an anticipation on evidence of this character, except in very extreme cases, which it is not necessary or indeed practicable now to describe. I will not say that there may not be a case in which evidence of this character may be persuasive. But the essential objection to finding an anticipation under circumstances like the present is as follows: The witnesses, assuming that they intend to speak the truth,—an assumption which I readily make in this case, as I perceive nothing in the evidence to the contrary,—are still, by the very necessity of the case, in a position where mistakes are easily made, and their evidence therefore should be received with great caution. The witness is familiar, in most cases, and notably so in this case, with the device which was patented subsequently to the construction of the machine which is alleged to be an anticipation. In recalling to his memory the construction of the earlier machine, he necessarily has in mind the instruction which he has received from the progress of the art in the meantime. It is therefore easy for him to transfer to his early device the characteristics which he now clearly sees are necessary to the accomplishment of the purpose which was then in mind, and difficult for him accurately to separate his recollection of the machine which was made from his present knowledge of the machine which ought to be made. The inventor who has perfected his invention and described it in his application is entitled to the benefit of the presumption that he is the first inventor; and it seems to me most dangerous to find that he is anticipated except on the most reliable evidence.

The Stonemetz patent is an improvement on the Kidder patent, and consists in devices for functions subsidiary to the underlying function of the Kidder device. The twelfth claim covers a device which, by the adoption of the horizontal posture for the type beds, and by other appropriate instrumentalities, is capable of printing at both movements of the cylinder forward and backward, and thus nearly, if not quite, doubles the capacity of the machine. The machine of the respondents performs this function. It is true that it performs it by means of type beds not situated in the same plane, as are the type beds, B, B¹, of the claim; but, inasmuch as the claim is not limited by the prior state of the art, I do not think it should be limited by the fact of references by letters to the specific mechanism shown in the patent. It is an all-controlling principle, at least in all cases of merely implied limitations drawn from the language of the patent, that the structure described and claimed is but one form of the invention, and includes all equivalent forms. Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co., 10 C. C. A. 194, 61 Fed. 958. It is, perhaps, not out of place for me to say that the principle which underlies that decision promotes exact justice in such cases. It proceeds, if I read it correctly, on the proposition that a limitation is not to be inferred from any words in the patent in cases where, from a consideration of the whole patent, taken in connection with the state of the art, the actual invention ap-

pears to transcend such limitation. The case of an express disclaimer is not, of course, here under consideration.

It is objected that this claim is not confined to a web-perfecting device, and is therefore anticipated by the state of the art. I cannot so read the claim. The whole scheme of the patent implies a perfecting press, and this scheme, it seems to me, is well imported into the claim by the words "substantially as and for the purpose set forth." It seems to me to be the final result of all the decisions on this point that these general words are to be construed as efficacious to import a limitation ascertainable from the specification, and necessary to make the claim coterminous with the invention, but are not to be used to import a limitation not inherent in the invention.

The seventh claim of the Stonemetz patent relates to the vertically moving rollers for taking up the slack of the web, and for moving the web forward. They seem to me to be a device for combining a continuous motion of the web, as a whole, with an intermittent motion thereof within the machine. This function, thus broadly stated, is found in the patent to Joseph L. Cox, No. 332,138, issued December 8, 1885, and in the English patent to William Robert Lake, No. 2,461, issued May 16, 1883. The claim, therefore, must be limited to the specific mechanism with its functions so far as they appear to be new. The use of one of the feed rolls as an adjusting roll, so as to obtain a proper register of the impressions, is admitted to be old, being used in the Kidder patent and elsewhere. There remains nothing in the claim, so far as I can see, except the specific function of feeding by the method shown in the patent. The invention of this claim I therefore find to be the intermittent feeding by means of one adjustable positively acting roller and one roller acting by gravity. The rollers on the respondents' device both act positively, and thus it follows that, although the result is the same, it is reached by a different method. There is, as the patentee says, a "slack," or a tendency to a slack, in the web, which is taken up or counteracted by the gravity-controlled roller; but in the respondents' machine there is no such tendency, and, inasmuch as I cannot find that the invention covers the function of intermittent motion, I must find that this difference in operation relieves the respondents from the charge of infringement. I do not therefore pass on the validity of the seventh claim.

The eighth claim has for its distinguishing function the attachment of the adjustable feed roll to the framework of the machine, whereby an adjustment may be made while the actively operating parts are in motion. I should hesitate long before holding that such a device involves invention. I find, however, that it is not novel, in view of the French patent, No. 72,585, and the patent to Vienot, No. 274,534, and of the testimony regarding these which is given by the complainant's expert, Mr. Livermore.

The fifth and tenth claims are distinguished, so far as I can see, by the fact that they call for two type beds located in the same horizontal plane. In this way, only, is the mechanism here claimed different from that in the twelfth claim. The type beds of the respondents' machine are in different planes, and therefore do not infringe.

The seventeenth claim must be limited in the same manner as the seventh claim, and must be held to cover only feed rolls which operate in the specific manner here shown, and therefore is not infringed by the respondents.

The decree will therefore find infringement of the first, second, and seventh claims of the Kidder patent, and the twelfth claim of the Stonemetz patent; noninfringement of the fifth, seventh, tenth, and seventeenth claims of the Stonemetz patent; and that the eighth claim of the Stonemetz patent is void for want of novelty.