## LACING STUD CO. v. PACKARD.

### (Circuit Court, D. Massachusetts. March 29, 1895.)

#### No. 42.

1. PATENTS—INFRINGEMENT—IMPROVEMENTS.
   Where the whole function of a patented device is performed by the same means and in the same way, the result is an infringement, although there is an additional function, which may be an improvement on the patent.

2. SAME—ANTICIPATION.
   A patent is not anticipated by a device which accomplishes the same thing, but by a different method, or which, while accomplishing similar ends, is not adapted to the particular work performed by the patented machine.

3. SAME—MACHINE FOR SETTING AND FEEDING LACING HOOKS.
   The Eppler patent. No. 255,076, for a machine for feeding and setting lacing hooks, *held* not anticipated as to claims 1, 3, 6, and 7; and *held* further, that the same are infringed by a machine made in accordance with the Smith patent, No. 309,166.

This was a bill by the Lacing Stud Company against Nathaniel R. Packard for alleged infringement of a patent.

Fish, Richardson & Storrow, for complainant.
John L. S. Roberts, for defendant.

CARPENTER, District Judge.    This is a bill in equity to enjoin an alleged infringement of letters patent No. 255,076, issued March 14, 1882, to Andrew Eppler, Jr., for machine for feeding and setting lacing hooks.    The machine used by the respondent is shown and described, with the exception of one particular, hereafter to be referred to, in letters patent No. 309,166, issued December 9, 1884, to Stephen N. Smith for machine for setting lacing hooks or studs.

The first, third, sixth, and seventh claims of the Eppler patent are here in issue.    The first and sixth claims are as follows:

"(1) In a machine for feeding and attaching lacing hooks, the reservoir having the rotary feeding plate provided with arms, substantially as described, adapted to collect and discharge lacing hooks, as set forth."

"(6) The reservoir having the rotary armed feed-plate, J, and a groove, 5, receiving the outer ends of the arms of said feed-plate, whereby the lacing hooks are prevented from clogging the plate and from wearing the outer ends of the arms thereof, as set forth."

These claims cover a reservoir for the lacing hooks having a feeding plate rotating vertically within and at such a distance from one side of the reservoir that those hooks which present themselves to the arms of the feeding plate with the setting prong towards the side of the reservoir cannot be taken up, while those which present themselves with the prongs extending towards the middle of the reservoir are taken up and carried forward and delivered to a track from which they pass to the setting mechanism; and provided also with an annular groove in which the ends of the arms of the feeding plate run, whereby the hooks are prevented from falling between the ends of the arms and the periphery of the reservoir, and so clogging the operation of the machine.    The respondent admits that he infringes these claims, and I see no reason to doubt that such is the fact.

The third claim is as follows:

"(3) The combination of the reservoir, having an aperture, I, the inclined guide or roadway set edgewise and projecting at its upper end into said opening, and the substantially vertical intermittently—rotating feeding—plate having arms, R, adapted to collect lacing hooks in the reservoir, each arm coinciding with the roadway when in an inclined position, whereby the hooks collected upon said arms are caused to slide upon the roadway, as set forth."

The characteristic function of the device here claimed is that of the inclined roadway which carries the hooks to the setting mechanism, and which projects into the reservoir so that the end thereof "coincides with" the arms of the feeding plate as they successively approach to deliver the hooks.    The whole of this roadway is fixed and immovable.    The respondent has a fixed inclined roadway which approaches very nearly to the end of the arms of the feeding plate; and for the purpose of carrying the hooks from the arms to this track there is interposed a short track, which extends within the reservoir, and coincides with the arms of the feeding plate in the same way as in the patent in suit, and has the further capacity of being depressed in case a hook should happen to project beyond the inner end of the movable track, and come in contact with the moving arm of the feeding plate, in which case the track will yield and allow the hook to be thrown out from

the path without injury or detention of the machinery. This device seems to me to show, exactly as in the patent, an inclined track, projecting into the reservoir, and coinciding with the arms of the feeding plate. The whole function of the patented device is here performed in the same way as in the patent, and there is the additional function, which may be an improvement on the patent, whereby an inconveniently projecting hook may be removed from the track. The patented device is here, with perhaps a patentable improvement.

The seventh claim is as follows:

"(7) The reservoir, having the rotary feed plate, J, the groove, 5, receiving the outer ends of the arms of said feed plate, and the cover, 3, secured to the body of the reservoir by screws, whereby the space between the outer side of the plate, J, and the cover, 3, may be regulated, as set forth."

The purpose of the mechanism here claimed is to provide means by which the side plate of the reservoir may be adjusted to and from the vertical rotating feeding plate, so that hooks of different sizes may be conveniently and efficiently taken up and carried to the inclined roadway. I have no doubt that the machine of the respondent has precisely this function. The side plate of the reservoir is in two parts, connected by a hinge, instead of being in one piece, and one part is fastened in place by a latch instead of by a screw. These differences appear in the machine used by the respondent, and are not shown in the Smith patent. But the side plate is none the less adjustable by the same means as those suggested in the patent in suit.

On the question of the validity of the patent, the respondent refers to certain prior patents and to two alleged anticipatory devices. The patent No. 104,257, to Horace C. Bradford, shows a vertical separator, which rises intermittently through the mass of hooks, carrying at each upward movement several hooks. This accomplishes the same thing as the patent, but by a different method. The patent No. 88,900, to Elijah S. Pierce, is in the same class, as it shows a rotating drum, on the inner surface of which are projecting slotted arms, which take up and deliver the screw blanks which are placed in the drum. The same observation may be made as to the patent No. 88,901, to Elijah S. Pierce, in which is shown a device of an intermittently swinging arm, which pushes forward the screw blanks. The patent No. 85,224, to A. J. French, shows a circular feed plate with circumferential hooks, each of which enters a percussion cap and carries it forward. It transports the caps, but in a manner different from that used in the patent in suit. The patent No. 212,124, to Mellen Bray, shows a cylindrical reservoir adapted to be tilted or inclined, and an inner cylinder, which is rotated within the cylindrical reservoir, and has an opening, the edge of which is arranged to collect lacing studs from the mass placed in the reservoir, and elevate them to such an extent that when the reservoir is tilted the lacing studs will slide by gravitation from the edge of the inner cylinder onto an inclined roadway, thus reaching the same result by a method different from that of the patent in suit. The patent No. 101,228,

to Nathan S. Clement, shows rotating slotted arms which take up screw blanks and deliver them by gravity at a point near the center of rotation, thus varying from the method of the patent under consideration. The patent No. 232,169, to Thomas G. Bennett, shows rotating arms which take and carry cartridge shells in much the same way, so far as the present discussion is concerned, as the device of French. The patent No. 108,295, to Charles D. Rogers, shows a reservoir which, by tilting, discharges such of the screw blanks as have fallen into a slot in the reservoir. The method here seems to me to be radically different from that of the patent in suit. It is to be observed also that most of the devices described in the patents above referred to are not adapted to feeding lacing hooks, and for this reason also do not anticipate the invention here in question.

The first of the alleged anticipating devices to which I shall refer was made and used by Samuel W. Shorey in July or August of 1880. The device itself is not shown, and its construction is to be learned only from an exhibit which is testified to be substantially similar to the alleged anticipating device. I should hesitate in this case to base a decision on this alleged anticipation, for the reasons more particularly set forth in the opinion in Campbell Printing Press & Manuf'g Co. v. Marden, 64 Fed. 782. There is also some reason to think, from the evidence, that the device was never practically operative. But I pass by these considerations, because it seems to me that the device is not an anticipation. It contains a reservoir and an intermittently rotating plate with radial arms which move through a mass of staples, some of which are taken up on the arms and slide by gravity to the center of rotation, and are there transferred to an inclined roadway. The method of operation, in the first place, is different from that of this patent. The staples remain on the same arm throughout the operation, and move only in a right line. But the main difference goes deeper than this. The Shorey device cannot handle lacing hooks which are unsymmetrical with reference to one diameter. The device of this patent is a reservoir with a feeding plate provided with arms substantially as described, adapted to collect and discharge lacing hooks, as set forth. This requires the peculiar arrangement of the feeding plate parallel with and not far from the side of the reservoir. This arrangement is of the essence of the invention; and it is not found in the Shorey machine, in which, indeed, it was not needed, since it is immaterial in what way the staples are arranged on the radial collecting arms.

The second of the alleged anticipating devices is a machine for feeding lacing button hooks, which was constructed by John S. Palmer in 1868. It appears that a considerable number of these machines were constructed and put into use, and so remained for some time, when they were disused, not, as appears from the evidence, because they failed to set the button hooks, but because shoes with button hooks were not wanted by the public, on account of certain inconveniences arising from the style of feminine dress then

prevailing. But the machines were practically used in business, and lacing hooks were by means of them put on a considerable number of pairs of shoes which were sold in the market. It therefore becomes necessary to consider that machine with reference to the question whether the invention of the patent in suit is there found. The device cannot, perhaps, be fully understood without reference to the following drawing, which is a copy of part of the application made by Palmer for a patent on his machine:

The construction and operation of this machine is correctly stated by the respondent in the following terms:

"The hopper or reservoir containing the loose mass of lacing hooks is provided with a rotary feeding plate journaled in the reservoir, and provided with a series of arms which pass through the mass of lacing hooks in the lower portion of the reservoir, each of which, as it passes through, catches one or more hooks which bestride the edge; as the plate revolves, the arms move upwardly, so that the hooks slide inwardly towards the center, and as the plate continues to revolve the hooks finally slide on to the next arm outwardly until they reach the roadway leading from the hopper, onto which they slide, and pass down the roadway to the setting devices."

"Upon reference to the drawing, it will be seen that the front or curved edges of the arms act as collectors of the hooks, and the rear or straight edges as chutes, to discharge the hooks upon the roadway or guide."

"There is an inwardly projecting piece or shoulder attached to the flat side of the reservoir, and arranged to collide with the projecting edges of improperly placed hooks, and dislodge them from the arms of the rotary plate while the properly placed hooks pass by the shoulder without touching it. This comprises the invention pointed out and described in the first claim of the patent."

"The reservoir, of course, has an opening or orifice through which the lacing hooks can be delivered, and the upper end of the guide or roadway projects into this opening a sufficient distance so that the hooks may readily slide from the end of the arm upon the inclined guide or roadway which conducts the hooks to the setting devices."

"The rotary feeding plate having these arms is rotated step by step by a ratchet and pawl, the ratchet being on the shaft upon which the plate is mounted, and the pawl pivoted to an arm journaled on said shaft, which is connected with an operating lever, by means of which at each step one of the feeding arms is brought into position opposite the end of the inclined guide or roadway, so that the hooks collected upon the arm are caused to slide down said roadway. This is the improvement forming the subject-matter of the third claim of said patent in suit."

"The reservoir or hopper is composed of two parts, held together by screws, one side of which is concave and the other flat. At the margin of the concave side of the reservoir is a groove in which the outer ends of the feeding arms move when the plate is rotated. This groove is for the purpose of preventing any portion of the lacing hooks from lying in such a position that they will get between the outer ends of the arms and the proximate surfaces of the reservoir over which the ends of the arms move when the plate is rotated. This is the improvement forming the subject-matter pointed out in the sixth claim of the patent in suit."

The respondent also suggests that when tubular shanked or eyelet shanked lacing hooks are employed, the shoulder or projection attached to the flat side of the reservoir is not needed and is not used, and only sufficient space is provided between the outer side of the rotating plate and the flat side of the reservoir to properly receive the head or outer portion of the hook; and that means are provided by which the screws fastening the flat side of the reservoir may be tightened or loosened, and washers inserted, so as to make the space between the flat side of the reservoir and the rotating plate adjustable; and that this combination of elements composes the invention referred to in the seventh claim of the patent in suit.

The question, then, is whether the function of the Palmer machine is the same as that of the patented invention of Eppler. The main and broad difference lies in one point. In the patented machine the track over which the hook passes, from the time it is taken up in the hopper until it has already entered on the inclined immovable roadway, is substantially continuous. That part of the track which is formed by the edges of the rotating arms abuts on, or, in the words of the patent, "coincides with," the immovable roadway at the moment when the lacing hook is delivered to the roadway. The rotating arm of the patent, therefore, delivers the hook to the roadway. On the contrary, in the Palmer device, as the arm rotates, the roadway, in effect, lifts the lacing hook from the arm; or, to put it in another way, the arm carries the lacing hook to the roadway, and places it thereon, and, moving downwards, leaves it on the roadway. This movement is the same in effect, as it would be if the roadway moved upward, and lifted the lacing hook from the arm. There is lacking the continuity of movement which results from the continuous track of the patent. The method of operation is different, and herein lies a patentable invention.

These preceding observations relate broadly to the first and third claims of the patent. The Palmer device does not seem to me to anticipate the sixth claim, because the groove does not extend entirely around the circumference described by the ends of the arms of the feeding plate. The groove in the Palmer machine,

indeed, extends over the lower part of the path of the feed arm,—that is, over that part of its path in which it encounters the lacing hooks,—and so prevents them from jamming between the ends of the arms and the periphery of the reservoir; but it does not serve what is evidently a further and subsidiary function of the groove, namely, to hold the arms in one plane as they rotate above the hooks, so as to make certain that they always will run in the groove at the point of operation.

The seventh claim also seems to me not to be anticipated, because the combination of that claim includes the annular groove; and in the adjustment, which is the function of the seventh claim, the groove plays a part. The purpose of the adjustment is to hold the side plate of the reservoir at a certain distance from the feeding plate, and this is aided by holding the feeding plate in substantially the same plane at all points of its circumference. There will therefore be a decree for an injunction and an account as prayed in the bill.