## BREWSTER–IDEAL CHOCOLATE CO. v. DAIRY MAID CONFECTIONERY CO.
### Patent Appeal No. 3023.

Court of Customs and Patent Appeals.
Feb. 6, 1933.

Clifton V. Edwards and Frank A. Bower, both of New York City, for appellant.

Howson & Howson, of Philadelphia, Pa. (George T. Steeley, Dexter N. Shaw, and Kennard N. Ware, all of Philadelphia, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents affirming that of the Examiner of Trade-Mark Interferences in a trade-mark interference proceeding declared by the United States Patent Office between the appellant and the appellee, in which decision the commissioner held the appellee to be the owner of the trade-mark involved and, as such, entitled to the registration for which it had made application.

The record is long and in many respects confusing, and in stating the facts involved in the particular issue upon which our decision rests, it will not be necessary to state in full all the facts and contentions involved in the many other different phases of the case as it is presented to this court.

The trade-mark involved is the term "Dairy Maid" used upon candy. The marks are alike and the goods are alike. There is no dispute but that the appellant's predecessor, Brewster Sons Company, adopted the trade-mark "Dairy Maid" in 1912 and used the same continuously thereafter until in 1927, when it combined with the Ideal Cocoa & Chocolate Company of Pennsylvania to form the appellant company, Brewster-Ideal Chocolate Company, and that appellant since 1927 has continuously used said trade-mark on candy. Appellant's business from the beginning continuously grew to a volume of twenty-five million packages for the period between the years 1919 and 1923, and appellant alleges that its business has been increasing since that time; that in 1922 the appellant registered its trade-mark in the United States Patent Office.

We think the evidence fairly shows that the appellant had no knowledge of appellee's trade-mark use of the term "Dairy Maid" until early in the year 1928, at which time its attorney notified appellee that it was infringing its "Dairy Maid" trade-mark and commanded it to desist from such use. Appellee immediately replied, asserting its ownership and use of the mark since 1908, declared its intention to continue such use, and soon thereafter filed with the Patent Office its application for trade-mark registration herein involved. Upon publication of notice, appellant appeared as opposer. The trademarks being identical and the goods being of the same descriptive properties, the Patent Office held the notice of opposition in abeyance and declared an interference. Both parties took testimony.

Appellee claims its trade-mark originated with one Otto P. Glaser, who began his business as a retail confectioner in a store on Germantown avenue in Philadelphia in 1888. Between the years 1906 and 1908 he began the manufacture of milk cream chocolates. He made several kinds of chocolates, one of which was labeled "Dairy Maid" and another labeled "Brunettes;" his son, Otto J., and his daughter, Elsie, entered his employ in 1910 and 1911, respectively, and the business was conducted at this place until in November, 1915 (some of the testimony shows this date to be October, 1915), when the father went into voluntary bankruptcy. There is some testimony in the record to the effect that Otto P. Glaser, some time in November, 1915 (before the trustee in bankruptcy took charge of the store), orally transferred to his son and daughter the trade-mark involved; that the oral transfer was made after he had decided to go into voluntary bankruptcy. He filed his petition in bankruptcy on November 16, 1915. The daughter and son leased a store on North Broad street, Philadelphia, some twenty-three blocks away from the old place of business, on the 19th of October, 1915; term of lease to begin November 1, 1915. A candy store was here opened on the 26th day of November, 1915. It is not disputed but that the said son and daughter, and later the father, and their successor, the appellee, have ever since the last-named date used in their candy business the trade-mark involved.

Appellee's evidence is very meager and uncertain, and is somewhat conflicting as to the exact dates and happenings at and about the time Otto P. Glaser entered into voluntary bankruptcy. The record does disclose, however, that the trade-mark or good will of the business was not listed among the assets taken by the receiver in bankruptcy; that the receiver or trustee in bankruptcy was not advised by Mr. Glaser or, as far as the record shows, by any one else, that Glaser's candy business was built up on the trademark "Dairy Maid," or that he had authorized his son and daughter to use this trademark prior to filing his voluntary petition. It does show that the receiver conducted the Glaser business for a short time, probably

two weeks, at the old stand, and during that time closed out the candies on hand. Probably no new candies were manufactured, but the old candy on hand was sold. There is testimony in the record to the effect that the father Glaser orally gave his son and daughter the right to use the trade-mark "Dairy Maid," and at the time agreed not to manufacture or sell any milk cream·chocolates under the trade-name "Dairy Maid," and that he (the father) did not thereafter manufacture or sell any milk chocolates under the "Dairy Maid" trade-name, except as is hereinafter related.

Appellee's testimony relating to the transfer, in 1915, of the trade-mark by Otto P. Glaser to his said children, was taken in the summer of 1929 and consists of the testimony of himself and his son and daughter, which testimony is somewhat contradictory. It is not supported by any documentary evidence whatsoever. The testimony of the three witnesses as a whole does not very definitely fix the character of the goods constituting the stock which was taken over by the trustee in bankruptcy. The son, however, testified quite definitely that the "stock, fixtures, good will, and so forth, were all sold" at public auction by the receivers who took charge of his father's business, but that the trade-mark was not sold with it.

The evidence which is claimed to constitute proof of the transfer of the mark in 1915, consists of fragments of testimony by Otto P. Glaser that, "He [the father] told Elsie and Otto that he would give them the right to use the name 'Dairy Maid,' and he would discontinue using the name 'Dairy Maid,' and stop the manufacturing of the candy milk chocolates, for which he used that trade name, and that he did not, after that time, manufacture any more milk chocolate, or use the trade name;" a statement to substantially the same effect by his son, Otto J. Glaser; and testimony somewhat to the same effect, but less definite, by the daughter, Elsie (Mrs. George B. Morris).

The record shows that the father, Otto P. Glaser, in December, 1915, worked with his son and daughter in the new store, helping them to make candy, and with the exception of a period of about four months, he continued to work there until discharged from bankruptcy on November 20, 1916. Soon thereafter, his daughter verbally transferred to him her interest in the business, and in 1918 his son, Otto J., "turned over" to him his portion of the business, and the father continued in business until the business was incorporated in 1927.

Appellee admits freely that it knew of appellant's use and claim of ownership of the trade-mark "Dairy Maid" from about the time of its registration in 1922, and that it made no effort to assert or protect its ownership as against the appellant until the institution of this proceeding.

From the foregoing facts, appellant urges: First, that the use of the mark by appellee's alleged predecessor, Otto P. Glaser, if any such use is shown by the meager record, was merely as a mark indicating grade and not origin; second, that appellee's oral testimony, unaccompanied as it is by any bills, advertisements, labels, boxes, or other printed or documentary evidence of an early trade-mark use of the mark, does not satisfactorily show an ownership in appellee prior to the date when appellant appropriated and used the mark; third, that there was no transfer of any trade-mark rights in the term "Dairy Maid" from Otto P. Glaser to his son and daughter; fourth, that if it were conceded that appellee at one time was the owner of the mark, its subsequent acts and silence estop it from claiming the exclusive right to use same, which right is a requisite for registration.

It is urged by appellee that from the foregoing facts it is shown that Otto P. Glaser owned the "Dairy Maid" trade-mark and used the same on chocolates from 1908 until 1915, and that prior to bankruptcy he made a valid transfer of such trade-mark to his son and daughter, and that the record therefore shows a continuous ownership and use of such trade-mark in the appellee and its predecessors from 1908 to the date of application for registration, which entitled it to an award of priority in the instant proceeding. It is contended that the oral transfer from father to children, without any express consideration, even though made a month prior to the father's entering voluntary bankruptcy, and in contemplation of bankruptcy, is valid as against everyone but the creditors of Otto P. Glaser.

Under the circumstances of this case we do not think it necessary for us to discuss or decide all of the different legal questions presented in the foregoing statement of facts, since we conclude that the testimony is wholly unsatisfactory and insufficient to justify a finding that there was any valid transfer of any trade-mark rights from Otto P. Glaser to appellee's predecessors, and that by reason of this fact, there is no use shown of said trade-mark prior to the institution of the new business in 1915 by the daughter and

son which may be used by appellee in the pending contest for priority, and thereby overcome the admitted adoption and use of the mark by appellant and its predecessors which began in 1912.

Regardless of what legal conclusions we would be required to arrive at, if all of the testimony were abundantly supported by documentary evidence and corroborating facts, we do not think that testimony of the character supplied by the record before us, as to the transfer of the trade-mark, should be given the force contended for by the appellee. In arriving at this conclusion we are not only influenced by a consideration of the pronouncements of the courts under circumstances in many respects quite similar to those which confront us, but by a consideration of the necessary and logical inferences that flow from such testimony.

Appellee's record was made, of course, after it knew the claim of appellant which appellee must overcome in order to win an award of priority. The whole transaction connected with the alleged transfer, assuming there was a valid ownership and use of such mark by Otto P. Glaser prior to 1915, carries with it the thought that there existed in the minds of the members of the Glaser family at the time such transfer was alleged to have been made, an intent to withhold something which might be of value from the trustee in bankruptcy and to withhold from him knowledge of the facts that such trademark had been transferred and was soon to be used again in connection with the new business. We think this condition of mind which existed at the time the alleged transfer was made somewhat colors the testimony which is offered as proof of transfer. If there was a valid ownership and use as claimed, manifestly Otto P. Glaser sought to divest it from the business which went to the trustee in bankruptcy, withhold it from the creditors, and in some way keep it for his children and possibly for himself eventually. If there was existing such a valid ownership in Otto P. Glaser, prior to its alleged transfer, sufficient to justify the carefully and meticulously worded oral transfer, as is claimed, it would seem that, unless the intentions of the parties were as above stated, a more definite contract would have been entered into by the parties, which would have been easier of establishment and more susceptible of convincing proof, such as would have been the case if it had been reduced to writing.

Such a statement of facts as this record affords, when presented under such circumstances as are at bar, in our judgment should never be allowed to be given such force in a trade-mark interference proceeding as to deprive one of priority whose claim to ownership and priority is otherwise unquestioned. Moreover, the circumstance that Otto P. Glaser and his successors knew that appellant or its predecessor had been using the Dairy Maid trade-mark since 1922, when it was registered, and did nothing which could be regarded as a protest until appellant's letter in 1928 was answered, is, to say the least, not a circumstance indicating a belief on the part of Glaser that he was the owner and entitled to the exclusive use of such mark. See Kennedy v. Slade, 47 F.(2d) 383, 18 C. C. P. A. 1024.

The burden of proof is upon the junior party in a trade-mark interference, and all doubts must be resolved against him. Mayer F. & J. Co. v. Virginia-Carolina C. Co., 35 App. D. C. 425. We, therefore, hold that appellee's testimony is insufficient to sustain the burden of proof required to overcome the proof of adoption and use of appellant's mark, and in this conclusion we are supported by the following authorities: T. H. Symington Co. v. National Malleable Castings Co., 250 U. S. 383, 39 S. Ct. 542, 543, 63 L. Ed. 1045; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 327, 67 L. Ed. 523; Campbell Printing-Press v. Marden (C. C.) 64 F. 782, 785; Collins v. Hupp Motor Car Co. (D. C.) 4 F.(2d) 272, 274; The Barbed Wire Patent, 143 U. S. 275, 284, 12 S. Ct. 443, 36 L. Ed. 154; Joannes Bros. Co. v. Forbes Tea & Coffee Co., 146 Ms. D. 394, 15 T. M. Rep. 177: John Macauley v. Malt-Diastase Co., 146 Ms. D. 51, 14 T. M. Rep. 156; In re Moore, 17 Fed. Cas. 663, No. 9,751; Willett v. Fister, 85 U. S. (18 Wall.) 91, 21 L. Ed. 804.

It is not necessary for us to discuss at length all the cases above referred to, since we think the underlying principle heretofore announced is common to all of them. It is true that some of the cases above cited relate to the insufficiency of oral testimony to prove priority of invention, in patent interferences; but we see no reason why the same principle does not apply, under certain circumstances, when priority in a trade-mark interference case is involved. There may be reasons for rejecting oral proof as to priority of invention which do not obtain in relation to a determination of trade-mark priority, but in many respects the principle applies with equal force. We do not mean to hold that oral proof is never sufficient to prove trade-mark use, ownership and

transfer, in a trade-mark interference case. Oral proof of such facts is very often regarded as satisfactory and sufficient, and, owing to the nature of the proceeding, should not be rejected or regarded as insufficient wholly on account of its oral character except in cases, like that at bar, where such proof and the surrounding circumstances lack probative force.

In T. H. Symington Co. v. National Malleable Castings Co., supra, the testimony of three witnesses, one of whom was the interested party, was relied upon to show priority of invention. No models, drawings, or exhibits were produced. Fifteen years had elapsed since the date as of which invention was being claimed. The testimony was not direct and strong, but weak and uncertain, and in some respects contradictory. In this decision the court said: "This court has pointed out that oral testimony tending to show prior invention as against existing letters patent is, in the absence of models, drawings, or kindred evidence, open to grave suspicion, particularly if the testimony be taken after the lapse of years from the time of the alleged invention." Such proof was there held to be insufficient.

In Eibel Process Co. v. Minnesota & Ontario Paper Co., supra, referring to oral evidence tending to show priority of invention, the court said: " * * * But there is not a single written record, letter, or specification of prior date to Eibel's application that discloses any such discovery by any one, or the use of the pitch of the wire to aid the speed of the machine. The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory."

In Campbell Printing-Press v. Marden, supra, the court rejected oral testimony as to the character of machine which was alleged to be an anticipation, and said: "I cannot find an anticipation on evidence of this character, except in very extreme cases, which it is not necessary or indeed practicable now to describe. I will not say that there may not be a case in which evidence of this character may be persuasive. But the essential objection to finding an anticipation under circumstances like the present is as follows: The witnesses, assuming that they intend to speak the truth,—an assumption which I readily make in this case, as I perceive nothing in the evidence to the contrary,—are still, by the very necessity of the case, in a position where mistakes are easily made, and their evidence therefore should be received with great caution. The witness is familiar, in most cases, and notably so in this case, with the device which was patented subsequently to the construction of the machine which is alleged to be an anticipation. In recalling to his memory the construction of the earlier machine, he necessarily has in mind the instruction which he has received from the progress of the art in the meantime. It is therefore easy for him to transfer to his early device the characteristics which he now clearly sees are necessary to the accomplishment of the purpose which was then in mind, and difficult for him accurately to separate his recollection of the machine which was made from his present knowledge of the machine which ought to be made."

In Collins v. Hupp Motor Car Co., supra, parol testimony of a prior use some twenty years before the testimony was given, unsupported by any exhibits, was held to be insufficient to overcome the presumption in favor of the validity of a patent. The court there said: " * * * The only structure shown to the court and appearing in the record is the one made long after this patent was granted. The other proofs rest entirely in the memory of witnesses, both as to the time of the use and as to the particular form of the structure. There are no contemporaneous exhibits, such as drawings, photographs, books, invoices, etc. They are talking about what they claim happened back in the year 1906, almost a score of years ago. It is entitled to careful consideration, but I have given it that careful consideration. I do not feel sufficiently certain of that oral testimony; it does not give me that feeling of security as to its accurateness which would justify me in the overturning of the presumption of validity which the law gives to a patent, and that certainty which the law requires a judge to feel in order to overturn and set aside a patent."

In Joannes Bros. Co. v. Forbes Tea & Coffee Co., supra, and John Macauley v. Malt-Diastase Co., supra (opinions by the First Assistant Commissioner of Patents), it was held that oral testimony, unaccompanied by satisfactory documentary evidence, was

insufficient to warrant a finding of priority in trade-mark interference cases.

In Re Moore, supra, oral testimony of verbal agreements by a bankrupt, which, if given full force, would have prevented the bankrupt's discharge, was held to be insufficient and unsatisfactory proof. The court there said:

"In my opinion, verbal admissions are the most dangerous and unreliable testimony which can be produced to a court of justice, and but very little reliance should be put upon them, when presented from interested witnesses, under circumstances similar to those in the present case. They consist of a mere repetition of statements made long since, and depend entirely upon the honesty, intelligence, and recollection of the witnesses, and in all cases, after a considerable lapse of time, when a witness undertakes to rehearse, from his recollection alone, the exact language and expressions of a party, I am but little inclined to yield a ready credence to its entire correctness; an unintentional change of a few words may give a meaning to the statement entirely different from what the party actually did say. * * *

"The position, assumed by these witnesses in their defence of the suit, brought against them in Bean's name for the recovery of the estate, I admit, is not without its effect on my mind, and has greatly diminished the respect and confidence which I might otherwise entertain for them, and the credence which I might have given their testimony."

In Willett v. Fister, supra, testimony from memory after a lapse of several years, which on its face, if given full credence, would have established the date of the payment of a claim, was rejected. The rejection was based chiefly upon the ground that it was a "six year old transaction" calling for a "minute recollection."

Since we conclude that the evidence relating to the transfer of the trade-mark is insufficient to warrant a finding of any trade-mark use by appellee's predecessor prior to 1915, which would be considered as being prior to such use by appellant and its predecessor as is shown and admitted, priority should, upon this record, be awarded to the appellant. Appellant, through its predecessor, being the owner and first user, is entitled to priority. It follows that the appellee is not entitled to registration, and the decision of the Commissioner of Patents is reversed.

Reversed.

HATFIELD, Associate Judge (specially concurring).

It is elementary that a trade-mark cannot legally be assigned apart from the business or property in connection with which it has been used.

The record in the case at bar establishes that at the time Otto P. Glaser attempted orally to transfer the involved trade-mark to his son and daughter, he actually had in his possession and in his place of business a few boxes, possibly only two, of the candy on which he used the trade-mark. The principle of law involved is not, however, affected by the small amount of candy in his possession. He did not transfer the candy, the formula therefor, nor property of any kind. He simply agreed that he would not use the trade-mark, nor manufacture the kind of candy—milk chocolate—on which he used the mark. Obviously, the alleged transfer of the trade-mark was not incidental to the transfer of any business or property of Otto P. Glaser. This being so, I am of opinion that, by the attempted transfer of the trade-mark and his failure to use it thereafter, Otto P. Glaser abandoned it; that, as appellant had used the mark continuously for several years prior, and continued to use it subsequent, to its abandonment, on goods of the same descriptive properties, its title is superior to that of appellee; and that the issues in this case are controlled by the decision in the case of Mayer F. & J. Co. v. Virginia-Carolina C. Co., 35 App. D. C. 425.

For the reasons herein stated, I concur in the conclusion reached by the majority of the court.

GARRETT, Associate Judge (dissenting).

The record in this case satisfies me that the elder Glaser acquired ownership of the mark in question prior to appellant's use thereof; that what transpired between him and his son and daughter in November, 1915, was sufficient to constitute a valid and legal transfer thereof, in so far as any rights of appellant are concerned; that, under the facts of the case, there was no legal abandonment of the mark by said elder Glaser; that appellant, in a legal sense, was never the owner of the mark as against the title of the elder Glaser and his successors in business; and that appellant has no right to the registration sought.

The decision of the Commissioner of Patents, in my opinion, should be affirmed.