## REED and others *v.* CHASE and others.

### SAME *v.* LAWRENCE and others.

### SAME *v.* COBB.

*(Circuit Court, W. D. Michigan. August 14, 1885.)*

1. LETTERS PATENT—REISSUE—EXPANSION OF CLAIM—VALIDITY.
    Where the reissue of letters patent covers anything not embraced within the original patent, the reissue is to that extent void.
2. SAME—EXPANSION OF DESCRIPTION—EFFECT.
    The insertion in a reissued patent of the inventor's opinion that his inven-

tion is one of a certain class, and reduced into form, accomplishing a successful result, where it does not in any way affect or enlarge the claim of the original, does not invalidate the reissue.

3. SAME—REISSUE CONSTRUED, AND HELD VALID.

  Reissue No. 9,148, dated April 13, 1880, given on original patent, No. 95,458, dated October 5, 1869, considered, and *held* to be valid.

In Equity.

MATTHEWS, Justice.   These cases come before me now upon a rehearing, a petition for which was allowed, upon doubts entertained as to the validity of the reissued letters patent, No. 9,148, dated April 13, 1880, issued to David L. Garver, assignor to the complainants, the original patent, No. 95,458, dated October 5, 1869, for an improvement in harrows.   There was an intermediate reissue, No. 8,142, dated March 26, 1878; but as that was surrendered when the subsequent reissue was granted, it has no relation to the present controversy.

At the time the decrees were ordered at the original hearing of these causes, no argument was heard on the question of the validity of the reissued letters patent, which are the foundation of the complainants' claim for relief, because shortly prior to that hearing the question, after argument before the circuit court sitting in Indiana, had been decided in the affirmative, and it was considered expedient and a matter of comity to follow that decision in this circuit.   The litigation having spread to other circuits, and doubts having been expressed by the judges in those circuits whether the ruling in favor of the validity of the reissued patent could be sustained, in view of the decisions of the supreme court upon the subject, a petition for a rehearing in these cases was allowed, and a full, thorough, and able argument has now been had upon the question, as though it was an original one, and the cases are now to be disposed of upon their merits, without prejudice from any former decrees.

The original patent was dated October 5, 1869.   The application for the present reissue was not made until May 29, 1879, after an intervening delay of nearly 10 years.   No facts in excuse for this apparent laches are shown or claimed to exist, and upon the well-established doctrine of the supreme court it must be assumed, without anything further, that the reissued patent, so far at least as it covers anything not within the claim of the original, is void.   This is conceded by counsel for the complainant.   On the other hand, it is maintained that if the claims of the reissued patent, or one or some of them, are either within the scope of the claim of the original patent, or are legally identical with it, to that extent the reissued patent can and ought to be upheld.   This is also the doctrine of the supreme court, as declared in *Gage* v. *Herring*, 107 U. S. 640, S. C. 2 Sup. Ct. Rep. 819, and is conceded to be so by the counsel for the defendant.   This question of identity as to the claims in the two pat-

ents is one of construction and comparison, to be determined from the face of the instruments, interpreted according to the principles of law. The specifications to the original patent, No. 95,458, issued to David L. Garver, read as follows:

"Be it known that I, David L. Garver, of Hart township, in the county of Oceana, and state of Michigan, have invented certain improvements in harrows, of which the following is a specification:

### 'NATURE AND OBJECTS OF THE INVENTION.

"My invention relates to the construction of harrow teeth of spring steel, and of such form that when attached to an ordinary harrow frame they will curve back over the bars of the frame, pass between them, and extend to the ground, their points inclining forward. The objects accomplished by my invention are the following, viz.:

"When a tooth strikes any solid substance, it rebounds or springs back and upward, thereby clearing the substance, and immediately enters the ground again, without interfering with the working of the other teeth. Frequent clogging is avoided, and the harrow can be moved from place to place as readily as a common sled, by simply turning it over.

### "DESCRIPTION OF THE ACCOMPANYING DRAWING.

"Figure 1 is a perspective view of a harrow provided with my improved harrow teeth. Figure 2 is a transverse sectional view of a bar of the frame, also showing one tooth and its fastening. Figure 3 is a longitudinal sectional view of a bar of the frame; also showing a tooth and its fastening.

### "GENERAL DESCRIPTION.

"A is a common harrow frame, constructed lighter than the ordinary teeth require it to be, and provided with hinges, Z, at the sides, bb; cc are bars, to the under side of which the teeth, d, are attached. The teeth, d, are made of spring steel about four feet in length, two inches in width, and one-fourth of an inch in thickness, having their points swedged in the shape of common cultivator teeth. The teeth are then bent in a circular shape, their points being about eight inches to the rear, and extending about five or six inches below, their ends. Their ends are fastened to the bar, c, by being let into the bar on the under side so as to be even with the under surface, and are there firmly held by one or more iron bolts, e, provided with nut and screw, as shown in figures 2 and 3. The points of the teeth incline forward and extend five or six inches below the under side of the frame. The dimensions of the teeth depend entirely upon the nature of the soil for which they are intended. If used in light, sandy soil, they may be constructed shorter; if in a clay soil, they should be stiffer; and if in rough, rooty, stony ground, they should be longer than I have described them. The shape or kind of frame, or the number of teeth used, are matters of choice. Sixteen teeth are enough for a medium-sized harrow. The construction of the teeth admits of the frame being made lighter than the frame of an ordinary harrow. Their points inclining forward, they have a tendency to enter the ground when the harrow is drawn, and this tendency obviates the necessity of a heavy frame.

### "CLAIM.

"I claim as my invention the circular-shaped harrow-tooth, d, constructed and used in the manner and for the purpose herein specified."

The drawings therein referred to are as follows:

Fig. 1.

Fig. 2.

The reissued patent of April 3, 1880, differs verbally from the original in the following particulars:

1. In the introductory part of the specifications there is omitted in the reissue the following words contained in the original, viz.:

"NATURE AND OBJECTS OF THE INVENTION.

"My invention relates to the construction of harrow teeth of spring steel, and of such form that when attached to an ordinary harrow frame they will curve back over the bars of the frame, pass between them, and extend to the ground, their points inclining forward."

2. For the words "description of the accompanying drawings" in the original, there are substituted the words, "In the drawings is represented a harrow embodying the principle of my invention."

3. At the conclusion of the descriptive part of the specification, next prior to the claims, there is inserted the following new matter not contained in the original, to-wit: "I am aware that prior to my invention a V-shaped cultivator has been provided with spring shovels inserted vertically in the beams or frame, but limited in their backward movement by downward projecting keys or wedges. I am also aware that horse-rakes have also been provided with spring teeth or fingers, and that upon seeding-machines such teeth or fingers have been employed for scratching in the seed; but none of said devices have been constructed with two or more series of such long curved spring teeth attached to and supporting the frame, and so far as I am aware, I am the first ever to have produced a harrow wherein the harrow frame is supported on two or more series of spring teeth which are adapted to yield to an unlimited extent when in use."

4. Instead of the single claim of the original, the reissued patent sets out the following: "What I claim is (1) the combination with a harrow frame of a curved harrow tooth made between its point of attachment to the frame and its point of contact with the ground to extend above the frame, so as to support the frame when turned upside down. (2) A spring-metal harrow tooth attached to a harrow frame and curved so that the main portion of the harrow tooth shall be located above the horizontal plane of the lower surface of said harrow frame, substantially as and for the purpose shown. (3) A harrow tooth of spring metal curved upward from its point of attachment to the harrow frame, then rearward above said frame and downward to its point of contact with the ground, substantially as and for the purpose shown. (4) A harrow tooth made of spring metal curved forward and upward in an arch extending well above the horizontal plane of its attachment to the harrow frame, and free from contact therewith, except on the lower side of the bar, supporting said tooth substantially as and for the purpose shown. (5) The combination, with a harrow frame, of series or rows of spring-metal teeth, curved substantially as described, mounted upon the bars or frame of the harrow, and supporting said harrow frame, substantially as and for the purpose shown. (6) A harrow consisting of a frame carrying rows or series of spring-metal teeth adapted to have a free and unlimited yielding motion to any abnormal pressure or obstruction, substantially as and for the purpose shown. (7) A harrow consisting of a frame carrying multiple rows or series of spring-metal teeth, said teeth curved between their points of attachment to said frame and their points of contact with the soil, and adapted to pierce and enter the ground as the harrow is drawn forward, and also adapted to have a free and unlimited yielding motion throughout their entire length, substantially as and for the purpose shown."

It is contended, in the first place, by counsel for the defendants that, irrespective of the changes in claims, the omission from the re-

issued patent of the clause descriptive of the nature of the invention, and the insertion therein, in connection with a statement as to the existing state of the art, that the patented harrow is the first in which "the harrow frame is supported on two or more series of spring teeth, which are adapted to yield to an unlimited extent when in use," enlarge the scope of the invention as originally described; and that this would have the effect, if the claims in both remained verbally the same, to extend the claim in the reissued patent beyond that of the original. As the claim in the original is for a harrow tooth described, constructed, and used as therein specified, it is manifest that a material change in the description of the tooth would materially affect the claim by applying it to a different invention. But such is not the present case. The construction, manner of use, and purposes accomplished by the circular-shaped harrow tooth referred to in the claim are in no respect altered by the changes made in the specification. The drawings are the same, and the description which identifies the tooth with them, showing its construction, the manner of its use, and the purposes to be effected, remains unaltered. The clause omitted, which declares the tooth to be of such form that when attached to an ordinary harrow frame it will curve back over the bars of the frame, pass between them and extend to the ground, its point inclining forward, simply points out what is otherwise apparent from the general description and is shown by the drawings themselves; so that it remains true, as thus shown, whether the express statement of it is contained in or excluded from the specification.

The statement in reference to the state of the art, and the relation of the invention to it, is not a substantive part of the specification, which by reference is embraced in the claim, so as to cover every harrow where the frame is supported on two or more series of spring teeth which are adapted to yield to an unlimited extent when in use; but is merely the expression of the inventor's opinion that his harrow is one of that class, and the first reduced into form, accomplishing a successful result. Its insertion in the reissued patent does not in any way affect or enlarge the claim of the original, considered or applied to it.

It is further contended, however, on the part of the defendant that the claims contained in the reissued patent are larger and more comprehensive than that of the original, and that, consequently, the two patents are not for the same invention. The argument on this point involves and turns upon the construction to be put upon the claim of the original patent. That claim, it will be remembered, is as follows: "I claim as my invention the circular-shaped harrow tooth, *d*, constructed and used in the manner and for the purposes herein specified."

The reference in the claim to the drawings and the specification undoubtedly constitutes them,—that is, the drawings and specifications,—to a certain extent, and for some purposes, a necessary part of

the claim; for the latter cannot be understood without importing into it the things referred to as a part of it.

It is contended in argument on the part of the defendants that every part of the drawings and description in the specification is made by the reference literally an essential part of the claim; and that, consequently, the claim is to be limited and restrained to the particular device described, not only in its general form and construction, but in every detail, so that merely formal variations from it, not affecting its mode of operation, or the functions of any of the parts, or the purposes and results accomplished, would not be infringements of it. It is therefore insisted that it is essential that the teeth covered by the patent must be of the precise geometrical shape shown in the drawings and described in the specification and claim as circular shaped; and that any variation from that shape, although not affecting the function or mode of operation, or general character of the tooth, or its effect in use, will not be an infringement of the patent.

So, too, it is insisted that it is an essential part of the patent that the teeth shall be fastened to the bars of the harrow on the under side, and that it is permissible, without infringing the patent, to use similar teeth, provided they are fastened to the upper side of the bars or otherwise.

But this mode of interpreting the patent, and the conclusions resulting from it, are not admissible. It rejects altogether, as inconsistent with it, the well-established rule of construing patents in the light of the existing state of the art, so as, by separating things which, although parts of the description, were well known and in common use, to eliminate the precise invention which it must be presumed the patentee intended to claim as his own, unless the claim itself is so express and unambiguous as not to admit their exclusion; and also the equally well-recognized rule that a patent, even though it claims a device by a particular description, must be held also to include everything which is a mere equivalent for it, not itself involving invention. Without the aid of these reasonable and beneficial rules of construction few patents would be of any practical value. In the present case, upon the literal interpretation insisted on to defeat the complainants' title to relief, it would be sufficient to show that in the machines alleged to be infringements the ends of the teeth were not fastened to the bar by being let into it so as to be even with the surface, or that they were not held by iron bolts provided with nut and screw, but were fastened in some other equally well-known and equivalent manner.

In my opinion the reasonable and correct interpretation of this patent includes within its grant the exclusive right, not only to harrow teeth made literally according to the drawings and descriptions of the specifications. but also all similar harrow teeth fastened at one end to the bars or frame of the harrow, and curved in shape so that they form an arch or bow above the plane of the bars or frame of the

harrow, and descend between the bars in a curve to the ground, their points inclining forward. Upon this construction it cannot be successfully contended that any of the seven claims contained in the re-issued patent, nor all of them combined, embrace anything not covered by the original. The claims of the reissued patent are separately within the original claim, and all combined are no more than its legal equivalent. The only purpose they can be conceived as accomplishing beyond the original claim is in excluding a construction of the original patent which its owner apprehended might possibly be suggested, which, if sustained, would not only defeat the reissue, but render the original of but little value, and which, as already declared, is not admissible.

It is equally clear that the defendants are guilty of the infringements complained of to the extent declared in the interlocutory decree. That decree is therefore confirmed, as is also the master's report, to which exceptions have heretofore been filed and overruled, and a final decree may be entered accordingly.