·KELSEY .HEATING CO.· v. .JAMES SPEAR STOVE & HEATING CO.

· (Circuit Court, E. D. Pennsylvania. August 31, 1907.)

No. 32. April Term, 1905.

1. PATENTS—INVENTIVE ˙ADVANCE—APPROVAL BY PATENT OFFICE.
    Where none of the devices relied upon by the defendants is a direct anticipation of the patented combination in suit—none having all of its .features, and those, which are made use of in some not being of exactly the same character, or put together in exactly the same way—although the inventive advance shown may not be large, the Patent Office having put the seal of its approval upon the invention, it will not be set aside.

2. SAME—INVENTION—APPROPRIATION BY DEFENDANT OF ESSENTIAL FEATURES.
    Where the defendants, instead of devising something for themselves,
 .· or taking up with some of the many forms open to them, have been so attracted by the complainants' device as to appropriate all its essential features, which they have copied slavishly, even to the name under which it is sold, affirming, as they thus do, in the most pronounced way possible to its superior merits and their own inability to do better, they cannot ˙well complain if the inventive originality which is claimed for it is held to sufficiently appear.

3. PATENTS—INFRINGEMENT—CHANGE OF FORM.
 . . The mere splitting up or multiplying of parts of a patented structure, ˙the functions remaining the same, does not avoid infringement.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 377.]

4. SAME—CONSTRUCTION OF CLAIMS—USE OF REFERENCE LETTERS.
    The use in a claim of a patent of letters of reference to the drawings does not necessarily limit the inventor to the exact form or configuration

of parts which is thus portrayed and described, without regard to possible equivalents. It may or it may not, according to circumstances. It is, after all, a matter of construction, in which, while a reference by letters to the drawings and specifications may be regarded, as a rule, as involving a greater particularity of description than without them, the real scope of the invention is nevertheless to be considered and given due weight. No doubt there are cases when, by reason of the limitations imposed by the prior art, it is necessary, in order to distinguish and save the invention, to confine it to a certain form or arrangement of parts, which the use of reference letters may serve to do; but, where no such necessity exists, the patent is to be taken as a whole, and effect given to the invention as it is there disclosed and claimed, in which the reference to the drawings merely goes in with the rest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 243.]

**5. SAME.**

In a patent for a combination of elements in a hot-air furnace having vertical flues, with flanges on the upper end for supporting the crown sheet, the fact that, as shown in the drawings and referred to by letters in the claims, such flanges are on the outside of the flue, does not limit the inventor to such form, where it is not an essential feature of the invention, and their transfer to the interior of the flue, where they perform the same function, is a change of form merely, which does not avoid infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 243.]

**6. SAME—HOT-AIR FURNACE.**

The Kelsey patent, No. 476,230, for a hot-air furnace, while for a combination of old elements, and not of broad scope, was not anticipated and discloses invention; also *held* infringed.

In Equity. Suit for infringement of letters patent No. 476,230 for a hot-air furnace issued to W. W. Kelsey May 31, 1892. Also charging unfair competition. On final hearing.

Howard P. Denison, for complainants.

Charles H. Howson (Charles Howson, of counsel), for defendants.

ARCHBALD, District Judge.[1] The patent in suit is for a hot-air furnace; the claim relied on being as follows:

"5. The combustion-chamber, C, composed of the bottom plate, a, provided with the flanges, a', a', and apertures, the shell, e, and flues, f, f, seated on said bottom plate, said flues being formed with the shoulders, f', the crown-sheet, g, resting on said shoulders, and the rods, l, extending through the aforesaid flues and tying thereto the aforesaid bottom plate and crown-sheet, substantially as described and shown."

The defendants challenge the validity of the invention on the ground of the want of both novelty and invention; or, if that is not sustained, they contend that it is so narrowed and limited by the prior art, as well as by the terms of the patent, that they do not infringe upon it.

According to the specifications, the invention is said to consist "in an improved construction of the combustion-chamber, having air-flues extending vertically through it and tie-rods extending longitudinally through said flues and tying thereto the bottom plate and crown-sheet of the combustion-chamber, said arrangement protecting the tie-rods from soot and rust and obviating obstructions in cleaning the interior of the combustion-chamber."

[1] Specially assigned.

155 F.—62

Further explaining this by reference to the accompanying diagrams, it is said:

Fig. 1

Fig. 2

Fig. 3

"The combustion-chamber is composed of the bottom plate, a, provided with apertures, from which extend the flues, f, f, f, which are mounted on said bottom plate and held in place by flanges, a', a', on the plate and embracing the bases of the flues, as shown in Fig. 2 of the drawing. Upon the bottom plate is seated the shell, e, which is likewise held in place by a circumferential flange a' on said plate. The flues, f, f, are formed with the shoulders, f', a short distance from the upper ends thereof, and upon said shoulders rests the crown-sheet, g, which is also provided with openings, through which the upper ends of the flues, f, f, protrude. Said flues extend above the crown-sheet and terminate within the dome, D, and the shell, e, also extends above the crown-sheet, and thereby forms upon the top of the combustion-chamber a bed, b, for sand, which serves to pack all the joints on the crown-sheet. The bottom plate, a, and crown-sheet, g, are tied to the air-flues, f, f, by means of rods, l, which extend longitudinally through the interior of the air-flues and pass with their lower ends through ears, j, on the bottom plate and are provided with nuts under said ears, as shown in Fig. 2 of the drawings. The upper ends of the rods are bent outward and made to bear on the crown-sheet. Said rods are thus protected from soot and rust and obviate obstructions in cleaning the interior of the combustion-chamber."

A careful consideration of the prior art discloses nothing which negatives the novelty of the device so described and claimed. It is true that the different elements of it are not new. There is no novelty for instance in a combustion-chamber made up of top and bottom plates, with an encasing shell or jacket, and vertical flues with apertures above and below, extending through it. This is to be found in the Winchester (1869), the Bonnell (1871), the Guettermann (1877), the Godley (1886), and the earlier Kelsey (1889) furnaces, in the last three of which also the flues are held in place by flanges on the bottom plate over which they fit; while in the Guettermann, the Jaques (1878), the Godley, and the Kelsey the flues are provided with shoulders to support the top plate, these shoulders in the Jaques and the Kelsey being external and the flues protruding up through the top plate. In the Jaques, also, the space between the raised edge of the top plate and the projecting ends of the flues is utilized as a bed to be packed with sand or cement so as to make gas-tight joints, a feature, which so far as it enters into the case in hand, is thus not new. Neither is there anything novel in tie-rods, fastening together upper and lower plates; which are shown in the Bryent (1847), the Tillman (1872), the Hemmich (1875), the Boynton (1876), the Guettermann, the Godley, and the Heim (1888). In all of these, moreover, they are located in hotair flues, or away from the space given up to fire and smoke, and in the Tillman, also, the advantage of having them so removed and protected against the action of the products of combustion is expressly claimed. It may be that the Tillman is a somewhat different type of furnace or heater, but tie-rods are tie-rods, wherever they are, and the novelty of locating them away from the reach of fire and smoke cannot be maintained upon any such supposed distinction.

As already intimated, however, in none of the devices mentioned is a direct anticipation of the present combination to be found. None has all its features, and in none are those, which are made use of, of exactly the same character or put together in just the same way. The most that can be said is that there is a similarity of type; but it does not go far. It is said that no inventive advance is shown, and it must be confessed that it is not large. But the Patent Office, whether the

Tillman patent was before it or not, has put the seal of its approval upon the invention, and it is not to be lightly set aside. The defendants also, prompted as it is charged by a former employé, instead of devising something for themselves, or taking up with one of the other many forms open to them, have been so attracted by the complainants' heater as to appropriate all its essential features, which they have copied slavishly, even to the name—"warm-air generator"—under which it is sold. Affirming as they thus do, in the most pronounced way possible, to its superior merits and their own inability to do better, they cannot well complain if the inventive originality which is claimed for it is held to sufficiently appear.

Nor is the question of infringement doubtful. As just stated, except in one small particular, the heater which the defendants were putting out at the time the bill was filed was a complete copy of that of the complainants. Since then a slight change has been made, the rods which tie together the top and bottom plates, against the ends of the flues, instead of being integral, and extending the full length of the flues, are divided up, and two short bolts substituted, which tie to lugs at either end. But the mere splitting up or multiplying of parts, the function remaining the same, does not escape infringement, and that is the case here. The rods still serve as effectively as ever to draw the top and bottom plates against the ends of the flues, tying the structure firmly together which is the point in view; and they are still located within the air flues as before, being thereby protected against soot and rust and leaving the conbustion-chamber unobstructed for cleaning. The equivalence of the two constructions is so complete and the attempted evasion so manifest that it would be a reflection upon ordinary intelligence to have it succeed.

But another distinction is sought to be made. Both in the form of heater just considered, as well as the one which the defendants were apprehended in making at the time of filing the bill, the upper ends of the flues are provided with interior shoulders for the crown plate to rest upon, the same as in the Guettermann furnace, not to say others; while in the complainants' heater they are on the outside, the ends of the flues protruding above them, and affording opportunity for a cement or sand pack, to tighten the joints, as in the Jaques. But, so far as the claim in suit is concerned, the sand pack is an extraneous incident, which being specially provided for in the fourth claim is not to be implied here. Boyer v. Keller Tool Co., 127 Fed. 130, 62 C. C. A. 244. It is said, however, that the inventor has expressly declared for an exterior shoulder by the reference letter by which it is designated in the claim. The flues are not described, as it is pointed out, as provided generally with shoulders on which the crown sheet is to rest, which would permit of either kind; but as being formed "with the shoulder, f," the drawings of the patent, as well as the specifications where this reference is explained, being thus written into the claim. But the use of a reference letter in this way does not necessarily limit the inventor to the exact form or configuration of parts which is thus portrayed and described, without regard to possible equivalents thereto. It may, or it may not, according to circumstances, as the authorities abundantly show. Reed v. Chase (C. C.) 25 Fed. 94; Delemater

v. Heath, 58 Fed. 414, 7 C. C. A. 279; Campbell Printing Press v. Marden (C. C.) 64 Fed. 782; McCormick Harvesting Machine Co. v. Aultman, 69 Fed. 371, 393, 16 C. C. A. 259; Muller v. Tool Co., 77 Fed. 621, 23 C. C. A. 357; Sprinkler Co. v. Koehler, 82 Fed. 428, 431, 27 C. C. A. 200; Ross Mfg. Co. v. Randall, 104 Fed. 355, 43 C. C. A. 578; National Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 715, 45 C. C. A. 544. Nor are the cases which are some-times cited to the contrary (Weir v. Morden, 125 U. S. 98, 8 Sup. Ct. 869, 31 L. Ed. 645; Hendy v. Miners' Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207; Lehigh Valley R. R. v. Kearney, 158 U. S. 461, 469, 5 Sup. Ct. 871, 39 L. Ed. 1055), to be differently un-derstood. It is after all a matter of construction, in which, while a reference by letters to the drawings and specifications may be regarded, as a rule, as involving a greater particularity of description than with-out, the real scope of the invention is nevertheless to be considered and given due weight. No doubt there are cases where, by reason of the limitations imposed by the prior art, it is necessary, in order to dis-tinguish and save the invention, to confine it to a certain form or ar-rangement of parts, which the use of reference letters may effectively serve to do. But where no such necessity exists, the patent is to be taken as a whole, and effect given to the invention as it is there dis-closed and claimed, in which the reference to the drawings merely goes in with the rest.

In the present instance, outside of allowing the ends of the flues to protrude above the crown plate so as to provide a bed for the cement or sand pack—which, as already stated, is a mere incident, if, indeed, it at all enters into the form of device in suit—it is of no concern wheth-er the shoulders are outside or inside, the invention consisting in the improved construction of the combustion-chamber and the manner of assembling its different parts. Nor is any limit in this respect imposed by the prior art. The modification from exterior to interior shoulders is one of form, pure and simple, and not of substance, serving no useful purpose, and effecting no change in results. The defendants may thereby forego the opportunity for a sand pack on top of the crown sheet, but the surrender of an incidental and unclaimed advantage in this way, the essential features of the invention being retained, will not enable them to escape. It is their own concern if they have not got all the good out of the device that they might.

The case having been thus disposed of in favor of the complainants, upon the question of infringement, it is not necessary to consider the charge of unfair competition which is also made, nor whether it is consistent with the rest.

Let a decree we drawn, in the usual form, sustaining the patent and finding infringement, with costs.