Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court.
The Bethlehem Steel Company, a corporation organized under the laws of the State of Pennsylvania, brings suit to recover royalties for the use of a patented invention by the defendants. The patent in suit was the creation of Mr. Owen F. Leibert, an employee of said company, and for which he was granted letters patent No. 516768 on March 20, 1894, assigning the same to said company on March 27,1894. At the time said letters patent were granted the Bethlehem Iron Company, which subsequently by proper transfer became the Bethlehem Steel Company, was engaged in the manufacture for the defendants of 100 guns of various sizes under a contract made in 1891. The Bethlehem Iron Company, recognizing the importance of Leibert’s invention, immediately after his application for letters patent, communi *356 cated in writing with the Ordnance Department of the Government calling their attention to Leibert’s invention and requesting the department through the Secretary of War to urge the Commissioner of Patents to make said application special and thereby expedite its consideration. The Secretary of War preferred the request and it was granted. In February, 1894, the Bureau of Ordnance requested the Bethlehem Iron Company to furnish it full and complete information as to the Leibert invention, which was accordingly done, and, thereafter, in June, 1894, the bureau asked special leave to use said invention for experimental purposes on a 12-inch gun the defendants were then manufacturing at their Watervliet Arsenal, without the payment of compensation. In July following the company granted the request and the defendants prepared for said purpose full plans and drawings of the Leibert device. Almost four years elapsed between the preferring of the above request and a decision as to the form of breech mechanism to be used, in so far as this record discloses, the time being consumed in experimentation with many patented devices. During this period Mr. John W. Stockett, the Ordnance Bureau’s chief draftsman, designed a modified form of the Leibert mechanism, upon some of the features of which he secured letters patent, as shown in the findings, known in the department as “ Model 1895.” The Stockett “ Model 1895 ” was finally used at the Watervliet Arsenal. Contemporaneous with this transaction was the manufacture by the Bethlehem Iron Company of the 100 guns before mentioned for the defendants under its contract of 1891 and the question of the type of breech mechanism to be used was becoming important. Without entering into detail it is now only important to say that on the last 15 guns manufactured under said contract, “ Model 1895 ” was manufactured and used by the company and for said use compensation was paid by the company to Mr. Stockett.
In August, 1901, the Bethlehem Iron Co. became the Bethlehem Steel Co., and Congress on June 6, 1902, by special legislation, authorized the substitution of the steel company for the iron company in all contracts then in course of ex *357 ecution except the contract of 1891. On November 5, 1902, tbe plaintiff company in a written communication to the Chief of Ordnance called his specific attention to the fact that the patented invention then being used by the company was in fact the Leibert patent, and directed the attention of the defendants to a similar fact in connection with the manufacture by the department of certain other guns at other places. The letter concludes with a request for an opportunity to present this matter fully to the defendants. The chief of the bureau responded by saying that the claims of the Leibert patent were so much involved with other and similar devices that it was impossible for the bureau to decide the “ legal aspect of the case,” and concluded by requesting the company to institute suit to determine the question.
The plaintiff’s cause of action is necessarily ex contractu. It is a jurisdictional issue and must be first disposed of. The defendants contend in the first instance that the recited facts make out a case sounding in tort and hence the petition must be dismissed. The line of distinction between the two contentions has been clearly determined by the Supreme Court in numerous cases. The difficulty is more in the application than the ascertainment of the rule. If the facts bring the parties in such a relationship that the court can imply from their conduct and sayings an agreement to pay for the use of the invention, then the action is providently brought and may be sustained. From cases heretofore adjudicated upon similar principles it may be safely asserted that where the Government uses a patented invention “with the consent and express permission of the owner ” and does not “ repudiate the title of such , owner,” an implied contract to pay a reasonable compensation for such usage arises. As was said by Mr. Justice Brewer in Berdan Fire Arms Co. v. United States, 156, U.S., 522, 567:
“While the findings are not specific and emphatic as to the assent of the Government to the terms of any contract, yet we think they are sufficient. There was certainly no denial of the patentee’s rights to the invention; no assertion on the part of the Government that the patent was wrongfully issued; no claim of right to use the invention regardless of the patent; no disregard of all claims of the patentee, *358 and no use in spite of protest or remonstrance. Negatively, at least, the findings are clear.”
Mr. Justice McKenna in United States v. Sociéte Anonyme, etc., 224 U. S., 320, in discussing the elements necessary for the derivation therefrom of an implied agreement in a case strikingly similar to the present one, uses this language:
“ But these elements do not have to appear by the express declarations of the parties. They may be collected from their conduct. The alternative of a contract is important to be kept in mind. The officers of the Government knew of the De Bange invention and were aware of its great importance, and the purpose to deliberately take property of another without the intention that he should be compensated — in other words to do plainly a wrongful act — can not be imputed to them without the most convincing proof. Such proof does not exist in the present case. On the contrary, the record shows that compensation was contemplated. There was doubt as to the extent of it because there was doubt as to how far”the devices used were attributable to or belonged to De Bange or whether they constituted an infringement of his patent, and therefore there was hesitancy and doubt, not as to compensation, but as to the amount and extent of it.”
The findings in this case seem to bring it clearly within the rule of an implied contract. A resume of the entire transaction negatives any intention of the Government to infringe the plaintiff’s patent. The Ordnance Bureau was searching for the most efficacious device known to the inventive world to apply to its guns as a substitute for the one in use, a device performing a function of inestimable value in guns of the character here involved. Not alone were experiments being conducted to ascertain the value of plaintiff’s device but at least three other patented inventions conceived by strangers to this record were being carefully investigated. A real substantial competition was in progress and surely in the absence of most convincing proof we are not to presume the defendants intended to avail themselves of the highly technical information contained in ■ the respective letters patent that they might thereby infringe one or all. On the contrary, the department itself was not constructing a device; it put forth absolutely no efforts to bring into being *359 a segregated mechanism to which it claimed title. The department was dealing with patentees and patent rights consciously, openly, and fairly without a thought of denying payment to the lawful owner of the patent. The Ordnance Bureau, with its organized corps of skilled mechanics, constantly in contact with patent rights, instantly recognized the conflict in the claims of the patents before them. There is no doubt as to this fact. The uncertainty, as clearly appears from the letter set forth in the findings, was as to the legal rights of the patentees under their letters, and this they felt unable to pass upon. The plaintiff submitted its patent to the defendants, and defendants recognized its title by requesting a single use without the payment of compensation. Of course they knew they had no right to use it without pay, and had no intention to do so. Subsequently they did use a patented mechanism (true it is now claimed as the patent of another), but the defendants all through the course of this controversy were alone in doubt as to the rightful owner of the device to whom they should make payment. The letter of the chief of the bureau, dated December 23, 1895, is especially convincing of this fact. Brig. Gen. Flag-ler, then chief of the bureau, unequivocally attests the attitude of the department. The plans then being submitted to the arsenal show a device with respect to which he says: “ It is a modification of the Leibert design.” This, it seems to us, discloses in express language a recognition of plaintiff’s title to the invention as well as an apparent conflict in patent claims between the inventors, and forcibly negatives the possibility of an inference that the prospective use of the mechanical device contemplated a trespass upon the inventor’s property. The chief of the bureau knew the Ordnance Department had no invention of its own; that they were in the end going to use the property of another; that Leibert had not furnished his device for extensive use without the hope of compensation, and it is a rational inference from his conduct that he expected to pay the lawful owner of the patent when all conflicts were adjudicated. All the facts in the case and logical inferences therefrom furnish the *360 degree of mutuality necessary for the implication of a contract.
What, then, did Leibert invent? For many years inventors applied their genius in an endeavor to create a mechanical device that would remove the breech plug from the breechblock of a gun in such a way as to secure certainty, speed, and accuracy. It was a task of magnitude and great importance. The mechanism, if operative and valuable, must condense in compact and rather simple form mechanical elements capable of functioning in three distinct ways. The breechblock and plug of all army guns is the interrupted screw system, combined with the mushroom pin and De Bánge gas check. In order to remove the plug it first requires a rotary motion to disengage it from the interrupted screw threads and likewise overcome whatever adhesion may possibly obtain by reason of the tremendous pressure on the gas check. Secondly, a longitudinal motion to withdraw the breech plug from the breechblock, and lastly, a swinging motion to remove the plug after withdrawal to a position incapable of retarding the quick reloading of the gun. Obviously the reverse of these movements is as indispensable as the initial process.
Eunning through the long list of patents furnished the court as exhibiting the prior state of the art is the fundamental idea that to accomplish the purpose intended necessarily involved the employment of a wheel with teeth projections thereon, a crank or lever to turn the same, separate racks attached, respectively, to the breech and block of the gun to engage the teeth upon the wheel, and a swinging tray to receive the plug and convey it away from the open breech-block.
It is apropos at this point to observe that all these separate elements were old in the art. David N. B. Coffin, on April 28,1874, secured Letters Patent No. 150136 covering a mechanism for “imparting motion to machinery,” which clearly anticipated the possibility of a combination of the elements mentioned, to perform somewhat similar functions to those above set forth. Coffin’s wheel was not intended, and in fact could not be adapted to breech-loading ordnance, *361 but the original idea was there. While Coffin’s wheel did not function to first give the rotary and subsequently the longitudinal movement of bodily translation indispensable in the particular art now in issue, it nevertheless constituted a conception of the possibilities of a combination of elements possessing the functioning powers subsequently combined in various forms by inventors in breech-mechanism art. The distinction between Coffin’s device and those that followed was the failure of Coffin to grasp the idea “ in the combination shown of imparting two different successive movements to the same elements.” Coffin, from his specifications and claims, did not meet the emergency shown in the single compound ge^r wheel of the Leibert patent; ■he does not seem to have conceived the importance of the application of direct power to the compound wheel itself, to accomplish the rotary and longitudinal movements, but clearly had in mind the construction of a single wheel which, in combination with others, would directly impart power to the latter by the movement of the former — what may be said to be a conception of the translation of power by the forced movement of one wheel to other wheels in combination therewith, irrespective of the central idea of a rotary or longitudinal movement.
Seventeen years after the Coffin patent Henri Sneider, a citizen of the French Republic, obtained Letters Patent No. 464678 for a mechanical device designed for breech-loading ordnance. The inventor recognized the indispensable functioning principles of the elements to be employed. Sneider’s wheel is not technically a compound operating wheel. The essential power necessary to produce the dual movements in order to rotate and remove the plug from the breechblock of the gun is supplied by Sneider by the introduction of a worm wheel at the base of a perpendicular shaft upon which he places two separate sets of spur teeth, which in turn engage the racks on the breech plug. Sneider did not conceive the possibility of a single gear wheel with a single tooth projection performing exactly the same function he requires two separate teeth projections to do. In other words, Sneider employs two elements wherein Leibert uses but one.
*362 In June of 1893 Frank F. Fletcher was granted Letters Patent No. 499531 for certain new and useful improvements in breech mechanism for breech-loading guns. The Fletcher device was a combination patent and brought together in a simplified form the elements theretofore used by prior inventors and old in the art. Fletcher’s wheel (and the wheel is in fact the vital factor of all devices) is obviously distinct from Leibert’s. It nowhere discloses a conception of combining in a single mechanism, i. e., a single wheel, the dual functioning capacity obtained by Leibert in the use of one set of tooth projections operating to perform the same service for which Fletcher uses in fact two wheels arranged one above the other, each bearing tooth projections possessing no unusual or novel mechanical qualities. Fletcher’s device was indeed a substantial advance' in the art but not sufficient to anticipate the Leibert mechanism, the salient feature of which we believe will hereafter appear.
The two Canet patents, viz, No. 502172, granted July 25, 1893, and No. 539974, granted May 28, 1895, exhibit a breech mechanism where the inventive faculty of the mechanic approaches very near the line of novelty, utility, and op-erativeness in this particular art. They disclose with marked precision the difficulties to be confronted and may, we think, be justly characterized as marking out an apparent path to final success. In fact, it appears in the record that the Canet device of 1895 is in use in guns of small caliber and has proven its worth. In Army guns of large caliber its use has proven inoperative for it has been superseded by the very mechanisms involved herein. Canet had clearly in mind the utility and effectiveness of a compound operating wheel and designed one; he, too, missed the idea of a single set of tooth projections on a compound wheel functioning in a simple and powerful manner to produce the necessary motions; he required two distinct sets of teeth adapted to his wheel in “ tandem fashion ” to thus operate. Canet in both his patents found his tooth projections struggling against “ torsion strain ” particularly noticeable in No. 502172. The moment the rotary motion became checked the device upon the application of the translatory movement *363 failed to respond to effectually stop the former movements, thus working interference and damage to the interrupted screws on both the breech plug and block. The direct power indispensable to an effectual stoppage of the rotary motion prior to the application of like force to remove the plug from the breech was not obtainable in the Canet devices by the projection upon a wheel of a single set of worm teeth followed in succession by a distinct set of spur teeth. The idea of combining on a single tooth projection the dual function obtained by Leibert escaped Canet (it may be said to have barely escaped him), but an examination of his specifications and claims obviously discloses its absence, and leaves his devices to stand upon the old notion that to accomplish the intended purpose two separate and distinct sets of teeth projections must be employed upon the revolving wheel.
We have perhaps gone into a discussion of the prior art more extensively than the case warrants. There remains, as set forth in the findings, several other patented devices in each of which there unmistakably appears the employment in various ways of all the elements subsequently found in the Leibert device. The defendant’s vigorous insistence upon anticipation and for an extremely narrow construction of Leibert’s claims necessarily entailed a most careful investigation of this phase of the case and this fact, supplemented by the very nature and character of the novelty and utility of the Leibert invention, in view of the prior art, seemed to make the foregoing observations indispensable.
Leibert’s Letters Patent No. 516,768 were granted March 20, 1894. The specifications considered in connection with the claims set forth the conception of a combination device new in this art, of practical utility and operativeness. For more than 20 years noted inventors, men skilled in the use of ordnance, had been striving sedulously to accomplish the identical thing Leibert accomplished. Leibert created a compound operating wheel provided with teeth having both worm faces and spur faces. The inventor brought into being for the first time a simple, effective compound operating-wheel so constructed that the tooth projections thereon func *364 tioned to effectuate the identical purpose so long striven for. Leibert fashioned each single tooth in such way that in combination with the rack teeth on the breechblock, he obtained the power necessary to rotate the plug and disengage it from the interrupted screw threads, and by a continuous revolution of the wheel compel the same tooth projections to remove the breech plug from the breechblock. This is the extent of the novelty of Leibert’s patent and was all accomplished by the combination of elements old in the art. It was the conception of a new and novel form of compound operating wheel and despite its simplicity seems to us to involve real invention. It must be conceded in the face of the record that the vital, predominant element of the Leibert device rests in the unique compound operating wheel; it is the one feature upon which the efficacy of the device depends, and this wheel provided with the single set of teeth adapted to be used as worm and spur teeth is the distinct mechanism which rotates the breech plug and removes it from the block. All other features of the device were old in the art. The swinging tray, in fact, the essential detail construction employed to attach the device to the breechblock, had been used from the beginning and no claim is made for them. The advantages of the Leibert device are at once apparent; his new wheel brought forth a simple, and what is just as important, a compact mechanism small enough in size to be employed without undue interference with the proper use of the gun and avoiding the “ torsion strain ” noted in the expert testimony as the condemning feature of the prior patents.
The Leibert patent is assailed by the defendants from practically every angle of the patent law. It is challenged for want of novelty, operativeness, and utility, and the court is asked, in the event of failure to sustain the objections going to the validity of the patent, to strictly construe the claims of the patentee and limit the device to the exact one described.
That patent right may be lawfully predicated upon the combination of elements old in the art is, of course, conceded ; the cases are too familiar to require citation. If dif *365 ficulty is to be found in the application of the law it seems to certainly exist in the ascertainment of just what is new in the claimed combination. The elements of the combination being old and their usual purpose well known, the inventor must inevitably be put to the necessity of utilizing them in a new and novel fashion to produce a certain result. Leibert and every other inventor engaged in this particular art knew professionally the functioning power of worm teeth and spur teeth. Leibert’s predecessors were struggling, as he himself was struggling, to erect a device wherein or whereon he could unify these two well-known mechanical factors and make a single mechanical unit perform a double mechanical function; not, indeed, a new function, but a new machine, a new device, a new compound wheel, made up of old and well-known elements in the art and functioning in a novel way.
No assertion can possibly be sustained that the Leibert compound operating wheel as described in the specifications and claims of the patent in combination as shown is not a new and novel device. The prior art discloses no similar one as adapted to and used in combination with breech-loading ordnance, and despite the astute technical distinctions and descriptions found in the conflicting expert testimony in the record, the physical obvious fact, apparent and indisputable from an examination of the numerous patents in the record, show no device similar in identity or operating in the same manner as the Leibert wheel. The Patent Office granted the letters and the burden of establishing their invalidity rests with the defendants.
In the case of Potts v. Creager, 155 U. S., 597, Mr. Justice Brown said:
“It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result never obtained before it is evidence of invention.”
A long line of cases sustain without interruption the principle announced in Potts v. Creager, supra. The Leibert device as adapted to breech-loading ordnance superseded all forms of mechanism theretofore employed to pro *366 duce the intended effect. Its identity stands forth as emphatically as mechanical comparison can demonstrate. It was the conception of a device which no previous inventor had in mind and can not under the authorities be discredited because it brought together in simple and compact form a combination of elements, each of which had been theretofore used in a vain attempt to perform the exact functions Leibert’s compound operating wheel performed. That it involved more than mechanical skill to evolve the device is pertinently emphasized by the fact that such an arrangement had never suggested itself to numerous inventors assiduously engaged in this very art for a period of time bordering on a quarter of a century. Loom Co. v. Higgins, 105 U. S., 580.
In Whipple v. Middlesex Co. (Fish Pat. Cas.) the court said:
“ If by examination of the specifications, and applying to it the then state of the art, we can learn what the invention was, then the claim, which was designed to be a condensed summary of the invention, is to be construed so as to be coextensive with the invention, if that can be done without doing violence to the language.”
The specifications and claims of the Leibert patent are necessarily technical and minute. The patentee was endeavoring to cover all available phases of his invention and at the same time fully disclose its construction to those skilled in this particular art. What Leibert invented and what he claimed as invention was the compound operating wheel having both worm and spur-tooth projections thereon, each tooth being so constructed as to operate as a worm and a spur tooth to be used in combination as set forth. The starting and stopping lug were, it is true, essential details of construction but not new in the art, except as used by the inventor in his novel combination. The real invention abstracted from his specifications and claims is the new and novel form of compound operating wheel, a device claimed with, as before observed, much particularity, and detailed so plainly that it is difficult to find a single trace of obscurity. Why, then, should the inventor be limited, without *367 deviation, to the precise form of the device he specifies and claims ? First it is said he specifically designated his device by the reference letter “E.” This fact standing alone is insufficient to sustain the contention; the state of the prior art is the real determining factor, and from it deductions follow as to the scope of the patent. In Hopkins on Patents, vol. I, p. 199, an exhaustive citation of authorities discloses the rule in this respect. In Campbell v. Marden, 64 Fed., 782, 785, the court said:
“ Inasmuch as the claim is not limited by the prior state of the art, I do not think it should be limited by the fact of references by letters to the specific mechanism shown in the patent. * * * A limitation is not to be inferred from any words in the patent in cases where, from a consideration of the whole patent, taken in connection with the state of the art, the actual invention appears to transcend such, limitation.”
Again, on page 200, Judge Archbald is quoted:
“ But the use of the reference letter in this way does not necessarily limit the inventor to the exact form or configuration of parts which is thus portrayed and described, without regard to possible equivalents thereto. It may or may not, according to circumstances, as the authorities abundantly show. * * * It is after all a matter of construction, in which, while a reference by letters to the drawings and specifications may be regarded, as a rule, as involving a greater particularity of description, than without, the real scope of the invention is nevertheless to be considered and given due weight. No doubt there are cases where, by reason of the limitations imposed by the prior art, it is necessary in order to distinguish and save the invention, to confine it to a certain form or arrangement of parts, which the use of reference letters may effectively serve to do. But where no such necessity exists a patent is to be taken as a whole and effect given to the invention as it is there disclosed and claimed, in which the reference to the drawings merely goes in with the rest.” Kelsey Heating Co. v. Spear Stove & H. Co., 155 Fed., 976, 980; Keystone Mfg. Co. v. Adams, 151 U. S., 139.
Leibert sets forth his patent in seven claims. In no one of the claims, aside from the first, is the device indicated by letters or numerals and they are sufficiently comprehensive to embrace the invention, especially claim two. Taking the *368 claims in conjunction with the specifications it would be difficult indeed to say that the patentee recognized or intended a strict limitation to bis invention by the employment of the letter “ E ” in claim one. As indicative of this fact we find upon a critical examination of wheel “ E,” as it appears in the drawings and in claim one, that the worm and spur teeth projected thereon are not subdivided entirely around the periphery of the same, thereby giving rise to a contention that the device itself is anticipated by Canet, and if it were so limited much force would attach to the argument; but the specifications effectually remove all doubt as to what the inventor intended by this especial designation. They state: “ If the periphery of the wheel ‘ E ’ is greater than the length of the rack g2 it is not necessary to subdivide the worm threads throughout the whole extent of the wheel.” In specifying the above the inventor obviously disclosed a simple detail'of construction; surely he did not intend by so doing to obscure the real, primary element of- his device and minimize an invention by a voluntary specification of the simplest mode of construction and manufacture. Is it a fair inference to indulge, from such a state of facts, that, an inventor working, as the defendants aptly say, “ in an already crowded art,” intended to limit the novelty of his invention because in his claim he refers to a specific drawing which in fact exhibits the real functioning element of the mechanism but omits its completeness, an omission fully explained in his specifications? The state of the prior art warrants no implication that Leibert’s claims must be narrow and limited; on the contrary there is every reason from an examination of the letters patent to extend the inventor the benefit of the patent laws where it is apparent he has brought into being a new and novel device. Societe Anonyme, etc., v. United States, 224 U. S., 309. The distinctions between Leibert’s compound operating wheel and those which preceded it are so manifest that the untrained eye of the layman may easily detect them. The preceding inventors failed to conceive the real vital features of the Leibert wheel; every single device they brought forth or attempted to put in operation clearly missed the wonderfully simple but central idea *369 of Leibert, and that was the construction of a compound operating wheel with such tooth projections thereon that each single tooth arranged as specified would function both as a worm and as spur tooth. This record discloses no device which approaches it in novelty and usefulness. There was no apparent reason why Leibert should limit his claims, and we think they are coextensive with the invention and entitled to be so construed.
The defendants used the Stockett design under substantially the same circumstances enumerated in the Societe Anonyme case, supra. Stockett doubtless improved the Leibert patent, but even to the unskilled it is indisputably apparent that the invention of Leibert covered by his letters patent was the real functioning element of the Stockett mechanism. If you abstract from the Stockett device the Leibert tooth projections, having each a worm and spur face placed on the circumference of the compound gear wheel described in the Stockett specifications and claims, the device would be absolutely impotent and valueless to perform the indispensable movements for which it was intended. Stockett modified the Leibert patent by both transfer and omission of certain detail elements, but retained the identity of the Leibert mechanism and utilized it to furnish the vital element concededly indispensable to perform the three movements for which all inventors had been striving in this identical art. The history of the Stockett patent in the Patent Office shows beyond contradiction that he was instantly confronted with the Leibert patents and a contest of considerable extent ensued. The case in this respect is identical with the Societe Anonyme, etc., case, supra.
The case must be remanded to the general docket for proof as to royalties. The record furnishes no proof as to a reasonable compensation for the use of the invention. The proof and briefs must be filed herein on or before October 7, 1918, the case then to go on the November Calendar. It is so ordered.
Hay, Judge, DowNEy, Judge, and Baeney, Judge, concur.